**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DINAH YUKICH,<br><br>Plaintiff,<br><br>v.<br><br>MILES CHAMLEY-WATSON, USA FENCING, JESSICA SAXON, CREATE A LEGACY NOT A MOMENT, INC., and SHANNON DAUGHERTY,<br><br>Defendants. | Civil Action No. 2:26-cv-8140-KSH-AME<br><br><br><br><br>Motion Day: August 17, 2026 |

**BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS MILES CHAMLEY-WATSON, USA FENCING , CREATE A LEGACY NOT A MOMENT, INC., AND SHANNON DAUGHERTY**

Claudia A. Costa, Esq.
Aimée S. Lin, Esq.
**GOLDBERG SEGALLA LLP**
711 Third Avenue, Suite 1900
New York, New York 10017
646-292-8700
ccosta@goldbergsegalla.com
alin@goldbergsegalla.com
*Attorneys for Defendants Miles Chamley-Watson, USA Fencing Association (incorrectly pleaded as USA Fencing), Jessica Saxon, Create a Legacy Not a Moment, Inc., and Shannon Daugherty*

*On the brief:*
*Claudia A. Costa*
*Aimée S. Lin*

# TABLE OF CONTENTS

I.   INTRODUCTION.....................................................................................................1

II.  PROCEDURAL HISTORY......................................................................................2

III. FACTUAL BACKGROUND....................................................................................3

IV.  LEGAL ARGUMENT..............................................................................................5

    A.  **This Court Does Not Have Jurisdiction over This Matter;  Therefore, It Must Be Dismissed.** ..................................................................................................5

        1.  Plaintiff's Claims Must Be Dismissed in Favor of Arbitration or the Action Stayed Pending Arbitration...............................................................5

        2.  The Court Lacks Personal Jurisdiction over  the USAF and Legacy Defendants. ......................................................................................................8

    B.  **Plaintiff's Complaint Should be Dismissed Pursuant to Rule 12(b)(6).**......................12

        1.  Standard on a Motion to Dismiss Pursuant to Federal Rule Civil Procedure 12(b)(6) .........................................................................................12

        2.  All of Plaintiff's Claims against All Defendants are Preempted by the Ted Stevens Act ...........................................................................................13

        3.  Plaintiff's LAD Claims Against the USAF and Legacy Defendants and Saxon Must Be Dismissed Because Their Aiding and Abetting Liability is Not Sufficiently Alleged. ............................................................18

        4.  Plaintiff Does Not Allege Conduct Sufficiently Extreme or Outrageous; Therefore Her Claim for IIED Must Be Dismissed ........................................20

        5.  A Civil Conspiracy Claim Cannot Survive a Motion to Dismiss without an Underlying Tort .................................................................................................23

    C.  **The Complaint Should Be Dismissed Pursuant to *Forum Non Conveniens***...............23

V.   CONCLUSION ......................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 663 (2009) ...................................................................................... 13

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (2005) .................................................................. 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 12, 19

*Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355 (1998) .......................................................... 21

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014) ............................................ 6

*Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563 (2008) .................................................. 18

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ..................................................................... 5

*Clark v. Nenna*, 465 N.J. Super. 505 (App. Div. 2020) ............................................................... 21

*Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135 (App. Div. 2005) .................................... 22

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................... 9

*Dames v. United States Ctr. for SafeSport*, No. 25-3503,
2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026) ........................................................ 15-16, 17

*Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200 (Colo. App. 2018) ........................... 7

*FDASmart, Inc. v. Dishman Pharm. & Chems. Ltd.*,
448 N.J. Super. 195 (App. Div. 2016) ........................................................................................... 9

*Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940 (D.N.J. 1991) ............................................ 22

*Galbraith v. Clark*, 122 P.3d 1061 (Colo. App. 2005) .................................................................. 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ..................................... 9

*Harris v. Middlesex County College*, 353 N.J. Super. 31 (App. Div. 2002) ............................... 22

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984) ......................................... 8-9

*Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150 (2016) ......................................................... 14

*Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12 (App. Div. 2011) ............... 21-22

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................................... 8

ii

*Jevremovic v. Courville*, No. 22-4969,
  2025 U.S. Dist. LEXIS 131994 (D.N.J. July 11, 2025) ............................................... 22

*Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246 (2017) ........................................ 17

*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988) ..................................... 24, 25

*Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628 (3d Cir. 1989) ....................... 23

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ................................................ 10

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009) ............................. 8

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) ............................... 8, 10

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) ........................................................... 5

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997) ................................. 13

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) .................................. 12, 13, 14

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007) ....................... 11

*Oliver v. Funai Corp.*, No. 14-4532,
  2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015) ...................................... 8, 10

*Petrucelli v. Rusin*, 642 Fed. Appx. 108 (3d Cir. 2016) ......................................... 10-11

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...................................... 13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ................................................ 23, 25

*Radil v. Nati'l Union Fire Ins. Co. of Pittsburgh, PA*, 233 P.3d 688 (Colo. 2010)). ..................... 6

*Ruprecht v. Ruprecht*, 252 N.J. Super. 230 (Ch. Div. 1991) ........................................ 22

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007) .................... 25

*Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580 (7th Cir. 2001) ............................... 15

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ..................................................................... 5-6

*Taylor v. Metzger*, 152 N.J. 490 (1998) ...................................................................... 21

*Tech. Dev. Co. v. Onischenko*, 174 Fed. Appx. 117 (3d Cir. 2006) ............................ 23

*Turner v. Wong*, 363 N.J. Super. 186 (App. Div. 2003) ................................................. 21

*Vaughn v. JP Morgan Chase & Co.*, No. 24-1016,
   2025 U.S. App. LEXIS 31931 (10th Cir. Dec. 8, 2025). ........................................... 6

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .............................. 10

**Constitutions**

U.S. Const. art. VI, cl. 2 ............................................................................................. 13

**Statutes**

9 U.S.C. § 3 .............................................................................................................. 5-6

9 U.S.C. § 4 ................................................................................................................. 5

28 U.S.C. § 1441(a) ..................................................................................................... 2

36 U.S.C. §§ 220501-220505 ..................................................................................... 14

36 U.S.C. §§ 220521-220525 ..................................................................................... 14

36 U.S.C. § 220522(4)(B) ............................................................................... 14, 16, 18

LAD .................................................................................................................. *passim*

N.J.S.A. 10:5-1, *et seq*. .............................................................................................. 1

N.J.S.A. 10:5-12(e) ................................................................................................... 18

N.J.S.A. 10:5-12(f) .................................................................................................... 18

**Rules**

FED. R. CIV. P. 8(a)(2) ............................................................................................... 13

FED. R. CIV. P. 12(b)(2) ........................................................................................... 1, 8

FED. R. CIV. P. 12(b)(6) ............................................................................................ 12

## I.    INTRODUCTION

Defendants USA Fencing Association ("USAF") and Shannon Daugherty ("Daugherty"), collectively, the "USAF Defendants," and defendants Miles Chamley-Watson ("Chamley-Watson") and Create a Legacy Not a Moment, Inc. ("Legacy"), collectively, the "Legacy Defendants," and Jess Saxon ("Saxon"), move to dismiss the Complaint of plaintiff Dinah Yukich ("Yukich" or "Plaintiff"). As more fully set forth herein, Plaintiff's claims are barred, *inter alia*, by the arbitration provision to which Plaintiff agreed and the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501, *et seq.* (the "Ted Stevens Act"). Plaintiff agreed to arbitrate her claims regarding participating in USAF-sanctioned fencing events and to arbitrate those claims in Colorado and pursuant to Colorado law.

This matter relates to plaintiff Yukich, a transgender woman, not being categorized as a woman for purposes of an amateur USA Fencing-sanctioned competition. Yukich was not permitted to compete against women in a competition, but would have been permitted to compete against men.

Plaintiff, a resident of Maryland, asserts claims of violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* (the "LAD") (public accommodation) and New Jersey common law against the USAF Defendants, Colorado residents; Legacy, a California corporation, with principal offices located in New York, New York; and Chamley-Watson, domiciled in California.

The USAF Defendants, Legacy Defendants, and Saxon herein move to dismiss the Complaint for the following reasons:

- Lack of jurisdiction over this matter because there is a valid arbitration agreement between Plaintiff and USAF;

- Lack of personal jurisdiction over the USAF and Legacy Defendants pursuant to FED. R. CIV. P. 12(b)(2);

1

- Count Two against Legacy for failure to allege aiding and abetting liability under the LAD;

- Count Three against Saxon for failure to allege aiding and abetting liability under the LAD;

- Count Four against Daugherty for failure to allege aiding and abetting liability under the LAD;

- Count Five as to Chamley-Watson, for failure to allege aiding and abetting liability under the LAD;

- Count Six as to USAF for failure to allege aiding and abetting liability under the LAD;

- Count Seven as to all defendants for failure to allege sufficiently conduct that satisfies the demanding pleading requirements of a claim of intentional infliction of emotional distress ("IIED"); and

- Count Eight, a claim for civil conspiracy, as to all defendants, because this cause of action requires an underlying tort; since Plaintiff's IIED claim must be dismissed, Plaintiff's claim of civil conspiracy cannot survive.

- *Forum non conveniens* for the USAF Defendants and Legacy Defendants.

## II.    PROCEDURAL HISTORY

Plaintiff filed her Complaint in the Superior Court of New Jersey, Law Division, Atlantic County, on May 19, 2026.

On July 2, 2026 defendant USAF filed a Notice of Removal to this court pursuant to 28 U.S.C. § 1441(a) (a section of the Ted Stevens Act).

On July 8, 2026, all defendants applied for a "Clerk's Extension" to extend the time to Answer, Move or otherwise respond to the Complaint to July 23, 2026. That application was granted. This application follows.

2

### III.    FACTUAL BACKGROUND[1]

Plaintiff is a transgender woman; Plaintiff began her physical transition to womanhood in 2021. *See* Costa Cert. at Exhibit A (Complaint) at ¶ 5.

In July of 2023, Plaintiff re-activated her membership with USAF. *Id*. at ¶ 6. At Plaintiff's request, USAF changed Plaintiff's gender marker from "M" (for male) to "F" (for female). *Id*. at ¶ 8. Plaintiff was also marked as eligible to compete against women in fencing events. *Id*.

After letting her USAF membership lapse briefly, on April 9, 2025, Ms. Yukich reactivated her USAF Membership in 2025. *Id*. at ¶ 52. When becoming a member of USAF, Plaintiff signed a waiver which contained an arbitration clause. Pursuant to the arbitration clause, Plaintiff agreed that all claims arising out of or relating to her "membership or participation … in USA Fencing, including but not limited to any matter arising from or relating to … competition in any fencing event, whether staged under the auspices of USA Fencing … or some fencing administrative body … compliance with or violations of any rules, regulations, policy, practice, bylaw, statute or common law, of USA Fencing … including any issue concerning compliance by USA Fencing or by … any club member, individual member … shall be settled by arbitration." The Waiver is attached to the Costa Cert. as Exhibit B. *See* Costa Cert. at Exhibit B at 2. Furthermore, Plaintiff agreed that any such arbitration must take place in Colorado Springs, Colorado, and apply Colorado law. *Id*.

Plaintiff alleges that on July 22, 2025, USAF notified its members that USAF was being forced by the United States Olympic and Paralympic Committee to implement the "Trans Ban"

---

[1] For purposes of this motion only, Defendants accept the allegations in Plaintiff's Complaint as true. Plaintiff's Complaint is attached to the Certification of Claudia A. Costa ("Costa Cert."), submitted herewith, as Exhibit A.

that excludes transgender women from competing in women's events; however, transgender women are permitted to compete against men. *Id*. at ¶ 53.

Plaintiff claims that on or about August 1, 2025, USAF unilaterally changed Plaintiff's sex marker from "F" (for female) to "M" (for male). *Id*. at ¶ 58.

On or about August 1, 2025, USAF changed Plaintiff's gender marker back to "M" from "F," denying Plaintiff the ability to register for women's competitions. *Id*. at 10. In other words, if Plaintiff were to compete, she would have to compete against men.

In November 2025, Plaintiff attempted to register for the Miles Chamley-Watson Cup (the "Tournament"), a fencing tournament, scheduled for March 20-22, 2026, in Atlantic City, New Jersey, "but was blocked from registration and participation in any events scheduled for women." *Id*. at ¶ 12. Plaintiff claims Legacy "presented" the Tournament.

Plaintiff alleges that Chamley-Watson, because his name was used for the Tournament, "had full and final responsibility to control who would participate." *Id*. at ¶ 24. As such, Plaintiff claims that she reached out to Chamley-Watson at two different email addresses to try to gain entry to the Tournament as a female competitor. *Id*. at ¶ 23. Plaintiff did not receive a response. *Id*.

Plaintiff alleges that Legacy's denial of permission for Plaintiff to compete against women is a violation of the LAD, which prohibits discrimination in public accommodation, among other things.

Plaintiff further alleges that USAF, Legacy, Saxon, Daugherty, and Chamley-Watson aided and abetted one another's discrimination against Plaintiff. In addition, Plaintiff alleges that USAF, Legacy, Saxon, Daugherty, and Chamley-Watson committed IIED against Plaintiff. Lastly, Plaintiff charges all defendants with civil conspiracy in not allowing Plaintiff to compete against women.

IV.    **LEGAL ARGUMENT**

    A.    **This Court Does Not Have Jurisdiction over This Matter; Therefore, It Must Be Dismissed.**

        1.    <u>Plaintiff's Claims Must Be Dismissed in Favor of Arbitration or the Action Stayed Pending Arbitration.</u>

As set forth above, Plaintiff executed a waiver when she became a member of USAF. That waiver contained an arbitration clause which is at the heart of this motion. That clause is governed by the Federal Arbitration Act.

The central purpose of the Federal Arbitration Act, 9 U.S. §§ 1-16, *et seq.* (the "FAA") is to "place agreements to arbitrate upon the same footing as other contracts," ensuring that written arbitration provisions are "valid, irrevocable, and enforceable" in both federal and state courts. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citation and quotation marks omitted). The FAA applies broadly to any contract "involving commerce," a term interpreted by the Supreme Court to reach the full extent of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Here, the arbitration agreement involved is between Plaintiff, a Maryland resident, and USAF, in Colorado. Plaintiff, as a member of USAF, wished to compete in a tournament held in New Jersey. Attending the tournament alone requires interstate travel, thereby "involving" interstate commerce. Therefore, the arbitration agreement herein is governed by Section 4 of the FAA, which states, in part: "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Further, section 3 of the FAA is entitled, "Stay of proceedings where issue referable to arbitration." *Id.* It provides that, when any issue in a suit is subject to arbitration, the court "shall

on application of one of the parties stay the trial of the action until such arbitration has concluded." *Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024) (quoting 9 U.S.C. § 3) (internal quotation marks omitted). "Here, as in other contexts, the use of the word 'shall' creates an obligation impervious to judicial discretion." *Id*. (citation and internal quotation marks omitted).

Before a court decides whether arbitration should be compelled, however, the meaning of the Arbitration Provision must be interpreted. *Vaughn v. JP Morgan Chase & Co.*, No. 24-1016, 2025 U.S. App. LEXIS 31931, *12 (10th Cir. Dec. 8, 2025).[2] Because the Arbitration Provision designates Colorado law, we apply Colorado law. "Under Colorado law, [the court should] look to the plain and ordinary meaning of the terms of the agreement and construe it to effectuate the parties' intent and the purposes of the agreement." *Id*. (citing *Radil v. Nati'l Union Fire Ins. Co. of Pittsburgh, PA*, 233 P.3d 688, 692 (Colo. 2010)). "[A]ny doubts concerning the scope of arbitrable issues [must be resolved] … in favor of arbitration." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (citations and quotation marks omitted).

When Plaintiff joined defendant USAF as a member, Plaintiff signed the 2025 Individual Membership waiver (the "<u>Waiver</u>"), which contains an arbitration provision (the "<u>Arbitration Provision</u>"). A true and correct copy of the Waiver is attached to the Costa Cert. as <u>Exhibit B</u>. *See* Exhibit B at 2. The Arbitration Provision reads, in part:

> [A]ny controversy or claim arising from or relating to my membership or participation, … in USA Fencing, including but not limited to any matter arising from or relating to … competition in, any fencing event, whether staged under the auspices of USA Fencing, … the USOPC, the IOC or some other fencing administrative body… (iii) compliance with or violation of any rules, regulations, policy, practice, bylaw, statute or common law, of USA Fencing, … USOPC or IOC, or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing or by … club

---

[2] The unpublished decision is attached to the Costa Cert. as <u>Exhibit C</u>.

> member, individual member … of USA Fencing  … shall to the fullest extent permitted by law be settled by arbitration, provided, however, that prior to the commencement of any such arbitration, any and all available administrative procedures and remedies of USA Fencing, … USOPC, … IOC or applicable sports, governmental or administrative body shall be exhausted.

*Id*.

Plaintiff signed the Waiver, and, from the above, it is clear Plaintiff agreed to arbitrate her claims herein. *Id*. Further, the Waiver designates Colorado law and that the arbitration will be conducted in Colorado Springs, Colorado. *Id*. at 3. There is no dispute that the parties entered into a valid arbitration agreement. Plaintiff has repeatedly renewed her membership by her own admission and executed the Waiver with the Arbitration Provision. *Id*. at Exhibit A at ¶¶ 48, 52. The Arbitration Provision is prefaced by the word "ARBITRATION" in all caps. *Id.* at Exhibit B at 2. It is therefore "reasonably conspicuous," and "plaintiff's assent was unambiguous," as evidenced by her electronic signature. *Vernon v. Qwest Communs. Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013).

With respect to whether the dispute between those parties falls within the language of the arbitration agreement, it is clear it does. *Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200, 1205 (Colo. App. 2018), cert. denied, 2019 Colo. LEXIS 398 (May 20, 2019) (stating that under Colorado law, a Colorado court must compel arbitration if the scope of the arbitration agreement between the parties encompasses the plaintiff's claims); and *Galbraith v. Clark*, 122 P.3d 1061, 1064-65 (Colo. App. 2005) (same, but with respect to federal law, under the FAA).

Plaintiff's allegations make it clear that the Arbitration Provision in the Waiver applies to this action. For example, in paragraph 62 of the Complaint, Plaintiff alleges that the Tournament is a USAF-sanctioned event. Thus, based upon Plaintiff's own allegations, the Arbitration Provision in the Waiver applies to the within matter.

7

This matter was filed by Plaintiff in New Jersey Superior Court, ignoring the Arbitration Provision which mandates that these claims be submitted to arbitration in Colorado, and ignoring the choice of law clause designating Colorado law as applying to these claims. However, this is a valid arbitration clause between the parties and Plaintiff's allegations fall within the clause. Accordingly, and respectfully, the Arbitration Provision should be enforced and the matter dismissed or stayed pending arbitration in Colorado and under Colorado law.

2.    The Court Lacks Personal Jurisdiction over the USAF and Legacy Defendants.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal for lack of personal jurisdiction. "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). Further, such a "district court … may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has certain minimum contacts with New Jersey such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oliver v. Funai Corp.*, No. 14-4532, 2015 U.S. Dist. LEXIS 169998, *17 (D.N.J. Dec. 21, 2015)[3] (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (other citation, internal quotation marks and brackets omitted). When a defendant challenges jurisdiction, the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citation, internal quotation marks and brackets omitted).

Personal jurisdiction over a defendant falls into two categories: general jurisdiction and specific jurisdiction. A court may exercise specific jurisdiction over a defendant "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros*

---

[3] The unpublished decision is attached to the Costa Cert. as Exhibit D.

*Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984) (citation and internal quotation marks omitted). A court may exercise general jurisdiction over a defendant when the defendant's activities are "so 'continuous and systematic' as to render [the defendant] essentially at home" and thus subject to general jurisdiction in the forum state. *FDASmart, Inc. v. Dishman Pharm. & Chems. Ltd.*, 448 N.J. Super. 195, 202 (App. Div. 2016) (citations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded at home … [such as] place of incorporation, and principal place of business." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted). A court may exercise general jurisdiction over a corporate defendant in a forum other than its place of incorporation only in the "exceptional" case. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).

a.      The USAF and Legacy Defendants are Not Subject to General Jurisdiction in New Jersey.

The first step in the personal jurisdiction analysis is to determine if this Court may exercise general jurisdiction over the USAF Defendants. Plaintiff has not alleged that USAF is "at home" in New Jersey, nor can she. USAF is a Colorado not-for-profit corporation with offices located at 210 USA Cycling Point, Suite 120, Colorado Springs, CO 80919.[4] Nor has Plaintiff alleged that Daugherty resides in New Jersey, because she cannot. Plaintiff does not allege Daugherty's domicile, but she does allege Daugherty's office is located at USAF's address, above. Regardless, there are insufficient allegations to indicate that Daugherty is "at home" in New Jersey. While not alleged, Daugherty is a resident of the State of Colorado.

Similarly, there is no basis alleged to exercise general jurisdiction over Legacy and Chamley-Watson, which are domiciled in California/New York and California, respectively.

---

[4] *See* Costa Cert. at Exhibit A at ¶ 37.

9

Indeed, Plaintiff's allegations against Chamley-Watson consist of Chamley-Watson not responding to emails sent to him by Plaintiff to email addresses she admits she was unsure were correct. *See* Costa Cert. at Exhibit A at ¶¶ 69-74.

There is no basis alleged in the Complaint to support the exercise of general jurisdiction over USAF, Legacy, Chamley-Watson, or Daugherty.

<blockquote>
b.      The Court Does Not Have Specific Jurisdiction over the USAF or Legacy Defendants
</blockquote>

The next step in the personal jurisdiction analysis is to determine if Plaintiff has alleged a basis to assert specific jurisdiction over the USAF Defendants. Plaintiff has not. Specific jurisdiction over a defendant exists when that defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Oliver*, 2015 U.S. Dist. LEXIS 169998 at *17 (citing *Miller Yacht*, 384 F.3d at 96 (other citation omitted)). A court's exercise of personal jurisdiction "requires some act by which the defendant purposefully avails [themself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (citation and internal quotation marks omitted).

Importantly, "the defendant's conduct and connection with the forum State [must be] such that [defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). Courts apply a three-part test to determine whether specific jurisdiction over a non-resident defendant exists:

> first, the defendant must have purposefully directed [their] activities in the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

*Petrucelli v. Rusin*, 642 Fed. Appx. 108, 110 (3d Cir. 2016), [5] *cert. denied*, 580 U.S. 923 (2016) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quotation marks and brackets omitted).

Here, there are insufficient allegations of minimum contacts of any USAF or Legacy Defendant, with New Jersey or that Plaintiff's claims arise out of any such contacts. In fact, the Complaint is devoid of any facts that plausibly establish that USAF, Legacy, Chamley-Watson or Daugherty had any contact with New Jersey.[6] Further, with respect to Daugherty, even if she did have any contact with New Jersey, she would have done so in her capacity as an employee of USAF, not as an individual. In the employment context, jurisdiction over a defendant employee must be "assessed individually." *See Nicholas v. Saul Stone & Co., LLC*, 224 F.3d 179, 184 (3d Cir. 2000). Notably, "as a general rule, an individual whose contacts with the forum state are in [her] corporate capacity does not thereby become subject to jurisdiction in [her] individual capacity." *Nelligan v. Zaio Corp.*, No. 10-1408, 2011 U.S. Dist. LEXIS 28628, *9 (D.N.J. Mar. 21, 2011)[7] (quoting *Nicholas v. Saul Stone & Co., LLC*, No. 97-860, 1998 U.S. Dist. LEXIS 22977, *10 (D.N.J. June 30, 1998)).[8]

Plaintiff here makes allegations that she was discriminated against in violation of New Jersey law in connection with an athletic event held in New Jersey. To the extent that USAF

---

[5] The unpublished decision is attached to the Costa Cert. as <u>Exhibit E</u>.

[6] Plaintiff claims that Daugherty "engaged in activity in the state of New Jersey" when Daugherty communicated with Plaintiff. *See* Costa Cert. at Exhibit A at ¶ 38. Daugherty would have communicated from Colorado to Plaintiff in Maryland regarding an event in New Jersey. Finding jurisdiction under these circumstances would be tantamount to finding personal jurisdiction over a person for being mentioned in an out-of-state conversation.

[7] The unpublished decision is attached to the Costa Cert. as <u>Exhibit F</u>.

[8] A true and correct copy of the unpublished decision in *Nicholas* is attached to the Costa Cert. as <u>Exhibit G</u>.

Defendants allegedly acted against Plaintiff with respect to this tournament, they would have done so (*i.e.*, made decisions with respect to Plaintiff's ability to participate in the Tournament) in their "home" state of Colorado and Legacy and Chamley-Watson would have done so from their respective home states, California/New York and California. Because the Complaint does not sufficiently allege that the USAF Defendants have any contact with the State of New Jersey, and that the claims arise out of such contacts with New Jersey, the Court does not have jurisdiction over either of the USAF Defendants and the Complaint must be dismissed as to both.

With respect to the Legacy Defendants, Plaintiff similarly does not make sufficient allegations with respect to minimum contacts. With respect to Chamley-Watson, Plaintiff alleges that Chamley-Watson allowed USAF to use his name in connection with the Tournament, and that is sufficient contact with New Jersey to establish jurisdiction. Plaintiff is mistaken. Usage of Chamley-Watson's name for the tournament does not create a situation where Chamley-Watson would expect to be haled into court in New Jersey. As far as Legacy is concerned, Plaintiff offers no allegations establishing any kind of jurisdiction over Legacy.

Therefore, there is no basis alleged in the Complaint to support the exercise of specific jurisdiction over USAF, Legacy, Chamley-Watson, or Daugherty. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018).

### B. Plaintiff's Complaint Should be Dismissed Pursuant to Rule 12(b)(6).

#### 1. Standard on a Motion to Dismiss Pursuant to Federal Rule Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also* FED. R. CIV. P.

8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997 (citations omitted). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009).

Further, a complaint does not state claims upon which relief may be granted when those claims arise under state law when that state law is preempted by federal law. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018)

> 2.   All of Plaintiff's Claims against All Defendants are Preempted by the Ted Stevens Act
>
>    a.   Congress Established a Comprehensive, Uniform Federal Regime for Amateur Sport Eligibility and Dispute Resolution that Preempts Conflicting State Law Causes of Action.

Plaintiff's claims are preempted by the Ted Stevens Act. The Constitution's Supremacy Clause provides that "the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This language is the foundation for the doctrine of federal preemption, under which federal law supersedes conflicting state laws. *Murphy*, 584 U.S. at 477.

The Ted Stevens Act federally charters the United States Olympic and Paralympic Committee ("USOPC") and empowers it to certify National Governing Bodies ("NGBs") (such as

13

USAF) and assigns to the USOPC/NGBs the centralized authority to regulate athlete participation and eligibility in sanctioned amateur competitions. 36 U.S.C. §§ 220501-220505, 220521-220525. Among the express eligibility conditions for every NGB is an agreement to submit "any controversy involving … the opportunity of any amateur athlete, coach, trainer, manager, administrator or official to participate in amateur athletic competition" to binding arbitration administered under USOPC approved rules. 36 U.S.C. § 220522(4)(B) (requiring arbitration "upon demand" of the USOPC or the aggrieved participant). The statute's text – together with USOPC bylaws and movement arbitration rules – reflects Congress's purpose to ensure a uniform, national, and arbitral forum for participation disputes, not a patchwork of state law standards and remedies.

Under black letter preemption principles, when Congress erects a pervasive federal scheme in a domain requiring national uniformity and channels disputes into a specific remedial process, state law causes of action that would adjudicate those controversies are preempted by field preemption. *Murphy*, 584 U.S. at 479. Where, as here, state law (the LAD and New Jersey common law) interferes with Congress' intent, that state law is preempted. A court's "inquiry into the scope of a federal statute's preemptive effect is guided by the rule that the purposes of Congress is the ultimate touchstone in every preemption case." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016) (citation, quotation marks and brackets omitted).

Here, Congress's uniform, arbitration-centric framework created by the Ted Stevens Act leaves no room for state law claims that would supplant or second guess arbitration of decisions relating to an athlete's ability to compete. The Legacy Defendants, as alleged hosts of a USAF-sanctioned event (defendant USAF is an NGB), and USAF having to follow the USOPC's Athlete Safety Policy, required Legacy to follow USOPC's Athlete Safety Policy as well. *See* Costa Cert. at Exhibit A at ¶¶ 29, 32, 53, 62. Thus, USAF and Plaintiff were compelled to follow the procedure

14

created by the Ted Stevens Act. This means that Plaintiff is required to bring her grievances

pursuant to the procedure set forth in the Ted Stevens Act, *i.e.*, in arbitration.

        b.        Courts Applying the Act Repeatedly Hold that State Law Claims Attacking Eligibility/Participation Decisions are Preempted (or Must Be Resolved in the Ted Stevens Act's Arbitral Forum).

The Seventh Circuit's decision in *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580 (7th Cir. 2001), is instructive. There, an athlete asserted state law claims (contract and tort) to challenge eligibility determinations arising from anti-doping rules. The Circuit Court affirmed dismissal, holding that the Ted Stevens Act's allocation of authority over eligibility disputes and its dispute resolution scheme foreclosed state law litigation of those issues. In short, the Ted Stevens Act grants "the [USOPC] exclusive jurisdiction under the [Ted Stevens] Act, to determine all matters pertaining to eligibility of athletes," and state law claims "challeng[ing] … the method by which … eligibility of athletes" is determined cannot proceed outside the Ted Stevens Act's mechanisms. 244 F.3d at 596. The *Slaney* holding maps directly onto Plaintiff's theory here, which seeks to use the LAD to re-characterize and litigate a participation/eligibility decision governed by the Ted Stevens Act.

More recently, federal courts addressing disputes within the USOPC/NGB framework continue to require parties to proceed through Sports Act arbitration and to reject efforts to recast participation controversies as free-standing state law claims.

For example, in *Dames v. United States Ctr. for SafeSport*, No. 25-3503, 2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026),[9] a U.S. Soccer Federation ("USSF" – an NGB) coach filed a complaint in state court to combat various complaints made against him by players. *Id*. at *6-8. The coach alleged claims of violation of his "fundamental rights," and two claims of tortious

---

[9] The unpublished decision is attached to the Costa Cert. as Exhibit H.

interference. The court found that Dames' complaint, like the Plaintiff's here, "does no more to plead around the preemption problem than his original complaint, and so the claims should be dismissed because they really are just challenges to the [United States Center for SafeSports'] *eligibility determination*." *Id*. at \*10 (emphasis added). Here, Plaintiff tries to plead around the Ted Stevens Act by couching her eligibility to compete as she wishes as a violation of the LAD. However, it is clear that Plaintiff tried to compete in a USAF-sanctioned fencing event which operates under the USOPC, and, as such, Plaintiff's claims are barred by the Ted Stevens Act.

c.       Allowing the LAD to Govern Athlete Categorization and Eligibility Would Pose a Direct Obstacle to the Ted Stevens Act's Purposes

Plaintiff's LAD theory seeks damages and injunctive relief predicated on how a USOPC-recognized NGB (and those organizing a sanctioned competition – like Legacy) categorized an athlete for entry into women's events. But athlete categorization for sanctioned events is a core eligibility/participation determination Congress placed inside the USOPC/NGB system, subject to uniform rules and arbitration – not 50 different state civil rights regimes with divergent standards, remedies, juries, and discovery. Imposing LAD liability on participation decisions would (1) conflict with § 220522(4)(B)'s mandate that these controversies be resolved in binding arbitration; (2) undermine national uniformity by substituting state by state liability rules for the Ted Stevens Act's centralized process; and (3) deter NGBs and sanctioned organizers from enforcing nationally applicable eligibility policies for fear of inconsistent state law exposure. That is classic obstacle preemption. *See* Congressional Research Service, May 18, 2023, *Federal Preemption: a Legal Primer* (CRS Report No. R45825) https://www.congress.gov/crs-product/R45825 ("in its obstacle preemption cases, the Supreme Court has held that state law can interfere with federal goals by frustrating Congress' intent to adopt a uniform system of federal regulation;" in such a situation, state law is preempted.).

16

The USOPC's current governance materials reinforce the same point. They implement Congress' arbitration mandate and designate the arbitral body/rules that govern eligibility/participation disputes brought by amateur athletes within the Olympic & Paralympic Movement. Recognizing state law claims to re-adjudicate those same disputes would directly contravene the Ted Stevens Act's channeling of remedies. *Dames*, 2026 U.S. Dist. LEXIS 657 at *14-15 ("So the operative inquiry in determining whether this Court may hear [plaintiff's] claims [as opposed to referring them to arbitration]… is whether those claims are 'tort claims in name only' that ***really seek to challenge an eligibility determination***, or whether [the claims] present only allegations that [defendant] breached its own rules for" not allowing Plaintiff to compete against women.) (emphasis added).

Ultimately, Plaintiff is challenging USAF's decision not to allow Plaintiff, a transgender woman, to compete against women. A challenge to an individual's eligibility to compete in an NGB-sanctioned tournament falls squarely within the scheme of the Ted Stevens Act, which requires arbitration. Plaintiff here attempts to characterize USAF's eligibility determination as a violation of the LAD, or intentional infliction of emotional distress, or civil conspiracy under the common law. This cannot be permitted. Plaintiff is challenging her ability to compete in the Tournament, which requires her to arbitrate her claims pursuant to the Ted Stevens Act.

     d.     The Preemption Analysis Here is Distinct from –
                and Stronger Than – Routine FAA Preemption.

Even apart from the FAA's broad preemption of state law rules that disfavor arbitration, *see, e.g.*, *Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246 (2017), the Ted Stevens Act itself embeds arbitration as a substantive prerequisite for NGB certification and qualifying amateur sports' governance structure. That is, Congress did not merely permit arbitration; it required it for participation with respect to controversies as part of a comprehensive federal scheme. LAD claims

17

that would bypass that scheme are therefore doubly preempted – by the FAA and, more fundamentally, by the Ted Stevens Act's specific allocation of authority and remedies.

Plaintiff's claims seek to impose state law liability for an alleged denial of the right to compete against women at a USOPC/USAF-sanctioned event – a textbook opportunity to participate controversy. Under § 220522(4)(B), that dispute must be resolved in the Ted Stevens Act's arbitral forum. Allowing the LAD to supply a separate cause of action and damages remedy for the same alleged wrong would frustrate Congress's objectives, threaten uniformity, and create an impermissible end run around the arbitral process. The Court should therefore (i) hold that the Ted Stevens Act preempts Plaintiff's LAD claims, and (ii) dismiss those claims with prejudice or, at minimum, compel arbitration and stay this action pending completion of Act arbitration.

3.       Plaintiff's LAD Claims Against the USAF and Legacy Defendants and Saxon Must Be Dismissed Because Their Aiding and Abetting Liability is Not Sufficiently Alleged.

The LAD, among other things, prohibits an owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation … to refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges thereof, or to discriminate against any person … on account of the … gender identity… N.J.S.A. 10:5-12(f). Further, the LAD allows for liability against individuals: "For any person … to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden" by the LAD. N.J.S.A. 10:5-12(e).

To establish an aiding and abetting claim, a plaintiff must show that the individual defendant (1) aided the party performing a wrongful act that causes an injury; (2) was generally aware of his role as part of an overall illegal or tortious activity at the time he provided the assistance: and (3) knowingly and substantially assisted the principal violation. *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594 (2008) (citations omitted).

18

Plaintiff alleges that USAF discriminated against Plaintiff by not allowing Plaintiff to compete as a woman against other women in the Tournament. *Id*. at ¶¶ 35, 65. However, this does not qualify as discrimination under the LAD, in that Plaintiff was not denied the opportunity to compete: Plaintiff could have competed in the Tournament against men. Rather, Plaintiff chose not to compete because she could not do so in the way she preferred.

Even assuming *arguendo*, that Plaintiff successfully pleads a LAD violation by USAF, she fails to plead sufficiently aiding and abetting under the LAD. Plaintiff has not set forth that the individual Defendants were aware of his/her role as part of overall alleged illegal activity at the time they provided assistance and knowingly and substantially assisted in the principal violation. From what we can parse from the Complaint, it appears that Plaintiff alleges a primary violation of the LAD against USAF and Legacy, and charges defendants Legacy, Saxon, Daugherty, and Chamley-Watson with aiding and abetting USAF's and Legacy's violations of the LAD by merely alleging for example that Legacy is that the Tournament was "presented by" Legacy. Costa Cert. at Exhibit A at ¶ 29. That is all that is alleged. Merely presenting an event cannot be support for aiding and abetting. Nor can receipt of an email, without more, be aiding and abetting. Again, this allegation fails to allege that Chamley-Watson knowingly provided assistance to unlawful activity and knowingly and substantially assisted in the principal violation.

Plaintiff's Complaint is otherwise devoid of a factual basis supporting Plaintiff's claim of a LAD violation by Legacy. Plaintiff merely sets forth the elements of aiding and abetting liability and alleges that Legacy "did" those things. *See* Costa Cert. at Exhibit A at ¶¶ 30-31, 76, 93-99. This is insufficient pleading. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation, internal quotation marks and

brackets omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (A court is "not bound to accept as true a legal conclusion couched as a factual allegation.") (citations omitted).

Again, and with respect to Chamley-Watson, the Complaint only alleges that Chamley-Watson's name was used in connection with the Tournament and Chamley-Watson "ignored" two to three emails from Plaintiff; Plaintiff also alleges in conclusory fashion that Chamley-Watson "had full and final responsibility to control who would participate" *i.e.*, an eligibility determination, but does not support it with any factual basis. *See* Costa Cert. at Exhibit A at ¶ 25.

In relation to defendants Saxon and Daugherty, they communicated by email with Plaintiff. *Id*. at ¶¶ 65, 72. These emails demonstrate neither that Saxon or Daugherty were "generally aware of [her] role as part of an overall illegal or tortious activity at the time [she] provided the assistance nor that Saxon or Daugherty "knowingly and substantially assisted the principal violation." *See* Costa Cert. at Exhibit A at Exhibits B and D.

Therefore, because Plaintiff fails to allege facts that support her claims of aiding and abetting under the LAD against Legacy and Chamley-Watson, Plaintiff's claims of aiding and abetting violations of the LAD against Legacy, Chamley-Watson and Daugherty must be dismissed.

    4.    Plaintiff Does Not Allege Conduct Sufficiently Extreme or Outrageous; Therefore Her Claim for IIED Must Be Dismissed

Plaintiff alleges a claim of intentional infliction of emotional distress ("IIED") claim under New Jersey law. Plaintiff maintains that not being able to compete as a woman, but rather as a man, intentionally caused her emotional distress. These allegations are insufficient to support a claim for IIED.

There are four elements to the claim of intentional infliction of emotional distress in New Jersey. For starters, the defendant must have acted intentionally or recklessly. For an intentional

20

act to result in liability, the defendant must intend both to do the act in deliberate disregard of a high degree of probability that emotional distress will follow. *Turner v. Wong*, 363 N.J. Super. 186, 199 (App. Div. 2003).

Second, the Defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Taylor v. Metzger*, 152 N.J. 490, 509 (1998) (citations and quotation marks omitted).

Third, the defendant's actions must have been the proximate cause of Plaintiff's emotional distress. *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 365-68 (1998).

Fourth, the emotional distress suffered by plaintiff must be so severe that no reasonable person could be expected to endure such distress. *Clark v. Nenna*, 465 N.J. Super. 505, 511-12 (App. Div. 2020).

In the case at bar, Plaintiff has failed to allege that the Defendants engaged in conduct "extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12, 21 (App. Div. 2011). This element [is] an elevated threshold that is satisfied only in extreme cases." *Ingraham*, 422 N.J. Super. 21 (citation and internal quotation marks omitted). Plaintiff alleged that the Defendants followed a policy set by the USOPC which was set by a Presidential Executive Order. This hardly speaks of intentional conduct to cause harm to Plaintiff.

Moreover, New Jersey plaintiffs with far more egregious allegations as compared to Plaintiff's have failed to withstand dismissal of their IIED claim. For example, in *Ingraham*, the plaintiff was told by a human resources manager not to speak of her deceased teenaged and only

21

child in the workplace because it made her coworkers uncomfortable. *Id*. at 17. The Appellate Division in *Ingraham* did a survey of cases where New Jersey State courts "declined to find sufficiently extreme and outrageous conduct where: (1) the decedent's children from an earlier marriage were not informed about and thus excluded from a viewing at the funeral home after decedent was murdered, *Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135, 147-48 … (App. Div. 2005); (2) a supervisor expressed doubt that the plaintiff had been diagnosed with breast cancer, and then came near her "on the verge of physically bumping into [the plaintiff's] breast as if to see" if she truly had a mastectomy, *Harris v. Middlesex County College*, 353 N.J. Super. 31, 36, 46-47 … (App. Div. 2002); … and (4) the defendant in a divorce case had a long-term adulterous affair with her boss, *Ruprecht v. Ruprecht*, 252 N.J. Super. 230, 236-38 … (Ch. Div. 1991)." *Id*. at 22.

Even taking Plaintiff's allegations as true and in the aggregate, Plaintiff alleges that Defendants acted, at most, in a manner that was "unjust, unfair and unkind." This has specifically been found not to be sufficient to please a claim for IIED. *Jevremovic v. Courville*, No. 22-4969, 2025 U.S. Dist. LEXIS 131994, *18 (D.N.J. July 11, 2025),[10] appeal filed, Aug. 13, 2025 (quoting *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991)) (quotation marks omitted).

Plaintiff's allegations in her Complaint simply do not rise to the level required to state a claim of intentional infliction of emotional distress. For this reason, Plaintiff's claim of IIED does not have "facial plausibility" and must be dismissed with prejudice as to all Defendants.

---

[10] A true and correct copy of this unpublished decision is attached to the Costa Cert., submitted herewith, as Exhibit I.

5.      A Civil Conspiracy Claim Cannot Survive a Motion to
Dismiss without an Underlying Tort

The elements of civil conspiracy under New Jersey law are: "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (citations and quotation marks omitted). "Most importantly, the gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." *Id*. at 177-78 (citations and quotation marks omitted). There is no right of action with respect to the alleged underlying wrongs and Plaintiff's civil conspiracy claim must be dismissed as to all Defendants.

**C.      The Complaint Should Be Dismissed Pursuant to
*Forum Non Conveniens***

Whether to dismiss a case on the grounds of *forum non conveniens* is in the sound discretion of the court. *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir. 1989). A district court may dismiss a case "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion the plaintiff's convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981 (citation, internal quotation marks and ellipses omitted). In considering a motion to dismiss on the basis of *forum non conveniens*, the court must consider: "(1) the availability of an alternative forum; (2) the amount of deference to be accorded to the plaintiff's choice of forum; (3) the private interest factors; and (4) the public interest factors." *Tech. Dev. Co. v. Onischenko*, 174 Fed. Appx.17, 119-120 (3d Cir. 2006)[11] (citing *Lony*, 886 F.2d at 633). Further, "the district court

---

[11] A true and correct copy of this unpublished decision is attached to the Costa Cert. as <u>Exhibit J</u>.

23

[must] consider the availability of an adequate alternative forum and the amount of deference to be accorded to the plaintiff's choice of forum before it weights the private and public interest factors." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45 (3d Cir. 1988).

First, the District of New Jersey is an improper venue with respect to the USAF and Legacy Defendants. Defendants USAF and Daugherty are located in Colorado. *See* Costa Cert. at Exhibit A at ¶ 37. The Complaint completely neglects to plead how either of the USAF Defendants have connections to the District of New Jersey.

With respect to the Legacy Defendants, Legacy is a California entity with principal offices in New York and Chamley-Watson is alleged to live in California. *Id*. at ¶¶ 17, 27. As with the USAF Defendants, the Complaint completely neglects to plead how either of the Legacy Defendants have connection to the District of New Jersey. *See generally* Costa Cert. at Exhibit A.

Further, Plaintiff herself appears not to have a connection to this venue, as she is a resident of Maryland. *Id*. at ¶ 13.

Second, there is the alternative venue of the District of Colorado available with respect to Defendants USAF, Daugherty, and Saxon.

Third, while there normally is a strong presumption in favor of a plaintiff's chosen forum, "[w]hen the plaintiff's choice is not [her] home forum, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 874 (3d Cir. 2013) (citation, quotation marks and ellipses omitted). Here, the District of New Jersey is not Plaintiff's home forum, as she is a resident of Maryland. Therefore, the presumption in favor of Plaintiff's choice carries less strength, so the Court may look to other venues which may be more appropriate for the case.

Fourth, with respect to the private interest factors, "[a] federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience…" *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (citations, internal quotation marks, brackets and ellipses omitted). More specifically, a court should consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lacey*, 862 F.2d at 46 (citation omitted). By choosing New Jersey, Plaintiff seeks to drag two out of five defendants from Colorado Springs to New Jersey, and two other defendants from California (Legacy/Chamley-Watson) and New York (Legacy). Having to litigate this case in New Jersey will be particularly onerous for these four defendants, as their witnesses are located in Colorado, California, and New York. Moreover, the convenience to Plaintiff by being in New Jersey is minimal, as Plaintiff lives in Maryland.

Fifth, in considering the public interest, a court should examine factors such as

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Lacey*, 862 F.2d at 48 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6) (other citation and internal quotation marks omitted). Here, at bottom, Plaintiff takes issue with a policy of the USOPC, which

25

Plaintiff refers to as a "trans ban."[12] Plaintiff would have two organizations whom she named as defendants, together with two of their employees (also named as defendants) travel across the country to defend themselves, rather than litigate the controversy where it began: in Colorado with USOPC's "trans ban." Moreover, this Court and New Jersey residents should not be burdened with trying this case under New Jersey law, brought by a Maryland woman against citizens of Colorado, California and New York.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed as to the USAF and Legacy Defendants and Saxon in its entirety and with prejudice. In the alternative, this matter should be stayed pending arbitration.

Respectfully submitted,

*/s/ Claudia A. Costa*
Claudia A. Costa, Esq.

Dated: July 23, 2026

---

[12] This is a misnomer, as Plaintiff, a transgender woman, was not *banned* from competing – she was allowed to compete against men – with whom Plaintiff would ostensibly have comparable strength, stamina, speed and reach – all important factors in fencing.

26