# EXHIBIT C

**A** Neutral
As of: July 23, 2026 2:41 PM Z

## *Vaughn v. JP Morgan Chase & Co.*

United States Court of Appeals for the Tenth Circuit

December 8, 2025, Filed

No. 24-1016

**Reporter**

2025 U.S. App. LEXIS 31931 *; 2025 LX 551316; 2025 WL 3514012

JEANETTA VAUGHN, Plaintiff - Appellee, v. JP MORGAN CHASE & CO., a corporation, d/b/a Chase Bank; TRINA PELECH, an individual, Defendants - Appellants.

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History: [*1]** (D.C. No. 1:23-CV-02266-CNS-NRN). (D. Colo.).

*Vaughn v. JP Morgan Chase & Co., 707 F. Supp. 3d 1042, 2023 U.S. Dist. LEXIS 223284 (Dec. 15, 2023)*

## Core Terms

arbitration clause, arbitrate, chase, defame, district court, negligent infliction of emotional distress, ambiguous, customer, race-discrimination, contractual relationship, factual allegations, rock, unambiguously, fortuitous, scope of arbitration, encompass, reward, subject to arbitration, arbitration agreement, deposit account, abrogate, arbitration provision, race discrimination, compel arbitration, collateral matter, branch manager, trespass, motion to compel arbitration, contract construction, factual underpinning

## Case Summary

**Overview**
**Key Legal Holdings**

- Where a bank customer's claims for discrimination, civil rights violations, emotional distress, and defamation all arose from an incident that occurred while she was attempting to conduct account-related business at the bank, those claims 'relate to' her account or transactions and fall within the scope of an arbitration clause covering 'any dispute relating in any way to your account or transactions.'.

- The phrase 'relating in any way to your account or transactions' in a bank's arbitration agreement unambiguously encompasses claims based on alleged discriminatory treatment that occurred while the customer was at the bank to conduct account business, even if the claims are framed as civil rights violations or torts rather than contract disputes.

**Material Facts**

- Ms. Vaughn, a Black woman, opened an account with Chase in 2019 and agreed to the Deposit Account Agreement containing an arbitration clause.

- The arbitration clause covered 'any dispute relating in any way to your account or transactions.'.

- On June 9, 2022, Vaughn went to a Chase branch to withdraw money and obtain counter checks.

- While unlocking her debit card, she was approached by Trina Pelech, a White branch manager, who told her she was 'not welcome' and threatened to call police.

- Pelech called police, accusing Vaughn of trespassing.

- Vaughn filed claims for violations of the *Colorado Anti-Discrimination Act, 42 U.S.C.S. § 1981*, negligent infliction of emotional distress, and defamation.

**Controlling Law**

2025 U.S. App. LEXIS 31931, *1

- *Federal Arbitration Act, 9 U.S.C.S. § 16(a)(1)(C)*; Colorado contract law principles requiring courts to look to the plain and ordinary meaning of contract terms; Tenth Circuit precedent requiring courts to focus on factual allegations rather than legal theories when determining arbitrability.

**Court Rationale**

The Tenth Circuit reasoned that all of Ms. Vaughn's claims stemmed from the same incident at the Chase branch, which was directly connected to her status as an account holder and her attempt to conduct transactions. The court determined that 'but for possessing the Chase account,' Vaughn would not have been in the bank to experience the alleged discrimination. Therefore, the factual circumstances underlying her claims 'relate to' her account or transactions within the meaning of the arbitration clause, regardless of whether her claims were framed as discrimination, civil rights violations, or torts.

**Outcome**
**Procedural Outcome**

The Tenth Circuit reversed the district court's order denying the motion to compel arbitration and remanded the case with instructions to stay the action and compel arbitration of all claims.

# LexisNexis® Headnotes

> Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability
> Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability
>
> Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
> Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
>
> Business & Corporate Compliance > Alternative Dispute Resolution > Validity of ADR Methods
> Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

*HN1* **Arbitration, Arbitrability**

Under the Cummings test, to determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry. First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

> Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Judicial Review
> Business & Corporate Compliance > Alternative Dispute Resolution > Judicial Review
>
> Civil Procedure > Appeals > Standards of Review > De Novo Review
>
> Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Orders to Compel Arbitration
> Civil Procedure > ... > Arbitration > Federal Arbitration Act > Orders to Compel Arbitration
>
> Business & Corporate Compliance > Alternative Dispute Resolution > Validity of ADR Methods
> Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

*HN2* **Alternative Dispute Resolution, Judicial Review**

A district court's grant or denial of a motion to compel arbitration is reviewed de novo, applying the same legal standard employed by the district court.

> Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability
> Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

2025 U.S. App. LEXIS 31931, *1

Evidence > Inferences & Presumptions > Presumptions > Creation

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

### *HN3* Arbitration, Arbitrability

When interpreting arbitration agreements, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter. Courts discharge this duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted. The presumption of arbitrability does not take courts outside the settled framework for deciding arbitrability but simply assists in resolving arbitrability disputes within that framework.

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

### *HN4* Arbitration, Arbitrability

When interpreting the meaning of an arbitration clause, courts apply the state law where the agreement was formed. When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts.

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

Contracts Law > Contract Interpretation > Intent

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements
Civil Procedure > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

### *HN5* Arbitration, Arbitrability

Under Colorado law, courts look to the plain and ordinary meaning of the terms of the agreement and construe it to effectuate the parties' intent and the purposes of the agreement. To determine the scope of an arbitration agreement, courts must examine the wording in order to ascertain and give effect to the mutual intent of the parties as well as the subject matter and purposes to be accomplished by the agreement.

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

### *HN6* Arbitration, Arbitrability

When determining the meaning of contract terms using the plain and generally accepted meaning of the words employed, if the arbitration provision is unambiguous, courts apply the principle that written contracts that are complete and free from ambiguity will be found to express the intention of the parties, and courts will not look beyond the four corners of the agreement in order to determine the meaning intended by the parties.

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability
Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

2025 U.S. App. LEXIS 31931, *1

Business & Corporate Compliance > Alternative Dispute Resolution > Validity of ADR Methods

Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

### *HN7* Arbitration, Arbitrability

A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration. In evaluating which claims are arbitrable, courts must focus on the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action.

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > Contracts > Contract Conditions & Provisions > Arbitration Clauses

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

### *HN8* Arbitration, Arbitrability

Focusing on the factual underpinnings of a complaint rather than the legal causes of action asserted prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause.

Contracts Law > Contract Interpretation

### *HN9* Contracts Law, Contract Interpretation

All claims with a significant relationship to an agreement, regardless of the label attached to them, arise out of and are related to the agreement.

Contracts Law > Contract Interpretation

### *HN10* Contracts Law, Contract Interpretation

"Relating to" is broader than "arising out of." Therefore, cases that interpret the phrase "arising out of or relating to" are instructive for interpreting of the language "relating to."

Governments > Courts > Judicial Precedent

### *HN11* Courts, Judicial Precedent

Courts rely on unpublished cases for their persuasive value only and do not treat them as binding precedent.

Contracts Law > Contract Interpretation

### *HN12* Contracts Law, Contract Interpretation

Courts have generally interpreted language such as 'arising from or in connection with' quite expansively. To say that a dispute is one arising from or in connection with a topic is to say that it had some causal connection to—that it originated from, grew out of, or flowed from—such topic.

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > Alternative Dispute Resolution > Arbitration > Arbitrability

### *HN13* Arbitration, Arbitrability

A complaint can contain both arbitrable and nonarbitrable claims.

**Counsel:** For JEANETTA VAUGHN, Plaintiff - Appellee: Felipe Bohnet-Gomez, Iris Halpern, Crist Anthony Smith Whitney, Rathod Mohamedbhai, Denver, CO.

For JP MORGAN CHASE & CO., a corporation, TRINA PELECH, an individual, Defendants - Appellants: Naomi Beer, Esq., April Christine Connally, Greenberg Traurig, Denver, CO; Katherine Marie Clemente, Greenberg Traurig, One Vanderbilt Avenue, New York, NY; Brigid Cech Samole, Greenberg Traurig, Miami, FL; Elliot H. Scherker, District of Columbia, Washington, DC.

**Judges:** Before HOLMES, Chief Judge, EBEL, and BACHARACH, Circuit Judges.

**Opinion by:** Jerome A. Holmes

## Opinion

## ORDER AND JUDGMENT[*]

JPMorgan Chase Bank, N.A. ("Chase") and Chase employee Trina Pelech (collectively, "Defendants") appeal from the district court's order denying their motion to compel arbitration and stay Plaintiff-Appellee Jeanetta Vaughn's action. Exercising jurisdiction under *9 U.S.C. § 16(a)(1)(C)*, we determine that the factual allegations underlying each of Ms. Vaughn's claims unambiguously fall within the scope of the arbitration clause that Ms. Vaughn entered into with Chase—contained in the Deposit Account Agreement ("DAA"). Accordingly, all of Ms. Vaughn's claims are subject to arbitration. **[*2]** We therefore **reverse** the district court's order and **remand** so that the district court may stay the action and compel arbitration.

## I

Ms. Vaughn's claims arise from an incident at a Chase bank in Colorado.[1] Ms. Vaughn became a Chase customer in 2019. She opened her account in person at Chase's Quincy and Buckley branch in Aurora, Colorado on February 5, 2021. As part of opening her account, Ms. Vaughn completed the "Click to Sign" process, which required her to view and agree to the DAA. More specifically, when completing her electronic signature card, Ms. Vaughn assented to the acknowledgement, which stated, in part, "I acknowledge receipt of the Bank's Deposit Account Agreement [i.e., DAA] . . . and agree to be bound by the terms and conditions contained therein as amended from time to time." Aplts.' App. ¶ 21, at 127 (Decl. of Dene Stover, filed Oct. 11, 2023).

Section X of the DAA was entitled "Arbitration; Resolving Disputes." Aplts.' App. at 118 (Deposit Account Agreement and Privacy Notice, filed Oct. 11, 2023). It stated, "[y]ou and we agree that upon the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with **Fed. R. App. P. 32.1** and **10th Cir. R. 32.1**.

[1] We rely on the allegations in Ms. Vaughn's complaint for the facts of this dispute. *See, e.g.*, *Chelsea Fam. Pharm'y, PLLC v. Medco Health Sols., Inc., 567 F.3d 1191, 1194 (10th Cir. 2009)* ("[W]e look to the substance of the factual allegations in the complaint . . . ."). We consider these facts to be undisputed because Defendants cite and rely on them as true in their briefing. *See, e.g.*, Aplts.' Opening Br. at 4.

election of either of us, any dispute relating in any way to your account or transactions will be resolved by **[*3]** binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court)." *Id.*

Section X also contained a frequently asked questions portion, and one of the questions was, "What claims or disputes are subject to arbitration?" *Id.* The DAA provided the following answer:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, *regardless of what theory they are based on or whether they seek legal or equitable remedies*. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

> The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, **[*4]** if the Claim is in that court's jurisdiction and proceeds on an individual basis.

*Id.* (emphasis added).

On June 9, 2022, Ms. Vaughn went to a Chase branch in Aurora, Colorado to "withdraw money from her Chase account, as she ha[d] routinely done in the past, and to obtain counter checks." Aplts.' App. ¶ 22, at 23 (Compl. and Jury Demand, filed Sep. 5, 2023). Upon entering the bank, she sat down to "unlock" her Chase debit card, which she otherwise kept locked to prevent unauthorized use. *Id.* ¶¶ 24-29, at 24. Less than ninety seconds after Ms. Vaughn sat down, Trina Pelech, the Chase Branch Manager and Vice President, approached Ms. Vaughn. Because of its relevance to Ms. Vaughn's claims, we note that Ms. Vaughn is Black, and Ms. Pelech is White.

Ms. Pelech asked Ms. Vaughn whether she could help her with something, and Ms. Vaughn replied that she was unlocking her card and would then get in line to speak with the bank teller. Ms. Pelech reacted by telling Ms. Vaughn she was "not welcome" at the bank and

threatening to call the police. Aplts.' App. ¶¶ 33, 36, at 25. Ms. Vaughn was "[s]hocked" but said she would remain in the bank lobby and wait for the police to arrive. *Id.* ¶ 37, at 25. **[*5]** Ms. Pelech then left the lobby and called the police. She told the dispatcher that Ms. Vaughn was being "rude" and "aggressive" and accused her of "criminal trespass." *Id.* ¶¶ 52-53, at 26.[2]

Two police officers arrived at the bank several minutes later, and they spoke with both Ms. Vaughn and Ms. Pelech. In her complaint, Ms. Vaughn accuses Ms. Pelech of using body language to "mimic[] how Black women supposedly speak" during her conversation with the police. *See* Aplts.' App. ¶ 71, at 29. The police informed Ms. Vaughn that Ms. Pelech "felt Ms. Vaughn was trespassing" and "as a last resort Ms. Vaughn could be charged with trespassing" but that they "did not want to do that." *Id.* ¶¶ 91-92, at 31. The police ultimately informed Ms. Pelech "we're not going to make her leave right now. She says she is a customer. We're going to go wait in our car for her husband to get here and then if you tell her to leave, she said she'll leave." *See id.* ¶ 112, at 33. Ms. Vaughn's husband soon arrived at the bank, and Ms. Vaughn left with him.

## II

Ms. Vaughn filed a Complaint and Jury Demand in the state district court for Arapahoe County, Colorado. Ms. Vaughn's complaint raised four claims for **[*6]** relief: (1) violations of the *Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-601 et seq.*, by Chase; (2) violations of *42 U.S.C. § 1981* by Defendants; (3) state-law negligent infliction of emotional distress by Defendants; and (4) state-law defamation by Defendants. Defendants removed the case to federal court.

Defendants filed a motion to compel arbitration and stay

---

[2] It appears that Chase subsequently informed the Colorado Civil Rights Division that Ms. Vaughn started recording the altercation at the bank, and Chase told the Division that Ms. Pelech was motivated to call law enforcement *because* Ms. Vaughn was recording. Ms. Vaughn responded in her complaint that she did not threaten to record anything until *after* Ms. Pelech threatened to call law enforcement, and she ultimately never recorded Ms. Pelech or any activity at the bank. In any event, Defendants do not contend on appeal that Ms. Vaughn recorded at any point; they merely recite that "[p]er the Complaint's allegations, the Chase representative believed that Plaintiff was recording the interaction at the branch on her phone." Aplts.' Opening Br. at 5.

proceedings in the district court. They argued that all of Ms. Vaughn's claims were encompassed by the DAA, which meant Ms. Vaughn had agreed to arbitrate them. Ms. Vaughn opposed Defendants' motion, arguing that none of her claims were encompassed by the DAA's arbitration clause.

The district court denied Defendants' motion to compel arbitration and stay proceedings. The district court found that Ms. Vaughn and Chase had entered into a valid arbitration agreement in the form of the DAA. The district court then analyzed whether Ms. Vaughn's claims were encompassed by the arbitration provision using a test from *Cummings v. FedEx Ground Package Sys., Inc., 404 F.3d 1258 (10th Cir. 2005)*. **HN1** Under the *Cummings* test, "[t]o determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Id. at 1261* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001)*).

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify **[*7]** the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (quoting *Louis Dreyfus Negoce S.A., 252 F.3d at 224*).

Relying on *Cummings*, the district court determined that the arbitration agreement was broad but did not encompass Ms. Vaughn's claims because they "have little or nothing to do with Plaintiff's Chase account, the terms of the Deposit Account Agreement [i.e., DAA], or the parties' relationship." Aplts.' App. at 173, 177 (Order Den. Defs.' Mot. to Compel Arbitration, filed Dec. 15, 2023). Fundamentally, the district court held that Ms. Vaughn's claims "do not arise from, or relate to" the DAA. *Id.* at 177. Additionally, the district court found there was no "evidence that Chase intended to require customers to **[*8]** arbitrate racial discrimination claims."

*Id.* at 183 (italics omitted). Therefore, the district court denied Defendants' motion to compel arbitration on the merits and denied Defendants' joint motion to stay proceedings pending arbitration as moot. Defendants appealed.

## III

*HN2* "We review a district court's grant or denial of a motion to compel arbitration *de novo*, applying the same legal standard employed by the district court." *Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997)* (quoting *Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 796 (10th Cir. 1995)*).

### A

Defendants argue that the district court correctly identified the governing legal standard—the test from *Cummings*—and correctly held that the DAA was "generally broad," but failed to properly apply the presumption of arbitrability. At bottom, Defendants' argument is that Ms. Vaughn was, by her own admission, present at Chase to conduct business related to her account, so claims regarding her interactions with Chase while she was attempting to engage in account-related business fall within the DAA's scope.

Ms. Vaughn does not specifically dispute the district court's classification of the arbitration provision at issue here as broad, but she insists that the district court was correct in concluding that her particular claims are not covered by that provision. *See [*9]* Aplee.'s Resp. Br. at 17 ("Though the district court found the arbitration provision broad, Ms. Vaughn's claims are not an issue of contract construction and therefore arbitration was not ordered."). Specifically, she argues that "the district court correctly construed the DAA's plain language to find that Ms. Vaughn could not be compelled to arbitrate her discrimination and tort claims against Chase." *Id.* at 13-14. She contends that although "much" of the arbitration provision is ambiguous, it ultimately applies only to disputes that "are financial in nature and arise from Ms. Vaughn's account or transaction"—which is not, she argues, the circumstance regarding her dispute here. *Id.*

### B

At the outset of our analysis, we acknowledge that there is an open question regarding the continued viability of the *Cummings* test—which the district court and the parties applied. Specifically, there is a question whether the *Cummings* test has been abrogated by the Supreme Court's decision in *Granite Rock v. International Brotherhood of Teamsters, 561 U.S. 287, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)*.[3] *See Loc. Union 97, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp., 67 F.4th 107, 114 (2d Cir. 2023)* (per curiam) (explaining that the test from *Louis Dreyfus Negoce S.A., 252 F.3d at 224*, which we adopted and applied verbatim in *Cummings*, is "inconsistent with *Granite Rock*" and thus "cannot be good law").

Our circuit has not addressed any possible inconsistencies between *Cummings* and *Granite Rock*. None of our cases cite to both *Granite Rock* and *Cummings*. At least one published opinion by our circuit since the Supreme Court issued *Granite Rock* has continued to apply the *Cummings* test while not citing to *Granite Rock*. *See Sanchez v. Nitro-Lift Techs., L.L.C., 762 F.3d 1139, 1146 (10th Cir. 2014)*. On the other hand, several published opinions by our circuit have applied the *Granite Rock* test in lieu of—and, importantly, without mentioning—the *Cummings* test. *See, e.g.*, *Brent Elec. Co. v. Int'l Brotherhood of Elec. Workers Loc. Union No. 584, 110 F.4th 1196, 1212 (10th Cir. 2024)*; *Int'l Brotherhood of Elec. Workers, Loc. 113 v. T&H Servs., 8 F.4th 950, 958 (10th Cir. 2021)*.[4]

---

[3] In *Granite Rock*, the Supreme Court "reemphasize[d] the proper framework for deciding when disputes are arbitrable." *561 U.S. 287, 297, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)*. *HN3* Specifically, the Supreme Court held that, when interpreting arbitration agreements, it is

"the court's duty to interpret [*10] the agreement and to determine whether the parties intended to arbitrate grievances concerning" a particular matter. They then discharge this duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted.

*Id. at 301* (citations omitted) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)*). The Supreme Court rejected the notion that "the presumption of arbitrability" will sometimes "take[] courts outside our settled framework for deciding arbitrability. The presumption simply assists in resolving arbitrability disputes within that framework." *Id. at 302*.

[4] The parties did not address *Granite Rock* in their briefing at

However, we have no need here to address any possible inconsistencies between those two cases. In our view, **[\*11]** any tension between *Granite Rock* and *Cummings* primarily arises from the different reliance that the two cases place on a presumption of arbitrability. *Compare* *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO, 67 F.4th at 113* ("At bottom, *Granite Rock* stands for the proposition that courts may invoke a presumption of arbitrability *only* where the parties' dispute concerns a valid and enforceable agreement to arbitrate that is ambiguous as to its scope." (emphasis added)), *with* *Cummings, 404 F.3d at 1261* ("Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction . . . ."). And our resolution here does not depend in any fashion on a presumption of arbitrability. Instead, we conclude that under the plain terms of the arbitration clause, all of Ms. Vaughn's claims are unambiguously covered. And these plain terms are controlling—irrespective of whether *Granite Rock* or *Cummings* supplies the proper analytical framework.

## C

We now focus on the main issue: whether Ms. Vaughn's claims fall within the scope of the arbitration agreement contained within the DAA. We conclude that all of Ms. Vaughn's claims—that is, the factual allegations underlying **[\*12]** all of her claims—fall within the plain meaning of the arbitration clause's terms. Specifically,

---

the district-court level or initially on appeal. Accordingly, we ordered them to file supplemental briefs that addressed the impact (if any) of *Granite Rock* on the resolution of this appeal. In their supplemental brief, Defendants argue *Granite Rock* is not material to this dispute. They explain that "there is no difference between the *Granite Rock* formulation of the presumptive entitlement to arbitration under a valid and enforceable arbitration agreement and the framework in *Cummings*." Aplts.' Supp. Br. at 3. Defendants contend that the application of *Granite Rock* would not result in a different outcome here. On the other hand, Ms. Vaughn argues *Granite Rock* is material to the disposition of this case. She states that "the test in *Granite Rock* is incompatible with *Cummings v. FedEx Ground Package System, Inc.*[,] insofar as it [i.e., *Cummings*] suggests that arbitration provisions deemed 'broad' by the courts are not subject to the same rigors of contract formation as all other contracts." Aplee.'s Supp. Br. at 1. As noted *infra*, we have no need to explore further the impact (if any) of *Granite Rock* on *Cummings*; we may resolve this appeal without reference to the interplay between those two cases.

the unambiguous plain language of the arbitration clause encompasses all Ms. Vaughn's factual allegations in her complaint and thus necessarily her complaint's legal claims.

*HN4* It is at this point of interpreting the meaning of the arbitration clause that Colorado state law becomes applicable. *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)* ("When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). Yet our circuit's precedential decisions in similar cases nevertheless remain instructive as part of the "body of federal substantive law" regarding arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)*.

*HN5* Under Colorado law, "[w]e look to the plain and ordinary meaning of the terms of the agreement and construe it to effectuate the parties' intent and the purposes of the agreement." *Radil v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 233 P.3d 688, 692 (Colo. 2010)*. "To determine the scope of an arbitration agreement, we must examine the wording in order to ascertain and give effect to the mutual intent of the parties as well as the subject matter and purposes to be accomplished by the agreement." *Lane v. Urgitus, 145 P.3d 672, 677 (Colo. 2006)*. The critical language in the DAA arbitration **[\*13]** clause is: "any dispute relating in any way to your account or transactions." Aplts.' App. at 118. Based on the plain language of the arbitration clause,[5] the factual allegations underlying all of Ms. Vaughn's claims unambiguously relate to her account or transactions and thus necessarily her claims do as well.

Of course, we must examine Ms. Vaughn's complaint

---

[5] *HN6* Because we determine, using "the plain and generally accepted meaning of the words employed," that the arbitration provision is unambiguous, we apply the principle that "written contracts that are complete and free from ambiguity will be found to express the intention of the parties," and "we will not look beyond the four corners of the agreement in order to determine the meaning intended by the parties." *USI Props. E., Inc. v. Simpson, 938 P.2d 168, 173 (Colo. 1997)*. Therefore, to the extent Ms. Vaughn claims she did not foresee that the types of claims she now asserts would be covered by the arbitration clause when she agreed to it, these expressions of her intentions are legally irrelevant. We are only permitted to deduce the parties' intentions based on the plain language of the arbitration clause, and the plain language shows an intent to cover claims like hers.

with care to assess which of her individual claims are arbitrable. *KPMG LLP v. Cocchi, 565 U.S. 18, 22, 132 S. Ct. 23, 181 L. Ed. 2d 323 (2011)* ("[C]ourts must examine a complaint with care to assess whether any individual claim must be arbitrated."). **HN7** "A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration." *Id. at 19*. Critically, in evaluating which of Ms. Vaughn's claims are arbitrable, we must focus on "the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action." *Chelsea Fam. Pharm'y, PLLC, 567 F.3d at 1197*; *see also P & P Indus., Inc., 179 F.3d at 871* ("[I]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint *rather than the legal causes of action asserted*." (emphasis added) (quoting *Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987)*)); *City & Cnty. of Denver v. Dist. Ct. In & For City & Cnty. of Denver, 939 P.2d 1353, 1364 (Colo. 1997)* ("The factual allegations which **[*14]** form the basis of the claim asserted, *rather than the legal cause of action pled*, should guide the district court in making the determination as to whether a particular dispute falls within the reach of the [alternative dispute resolution] clause." (emphasis added)); 1 MARTIN DOMKE, GABRIEL WILNER & LARRY E. EDMONSON, DOMKE ON COMMERCIAL ARBITRATION § 8:14, Westlaw (database updated Jan. 2025) ("When deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted."). "To do otherwise . . . would undercut the policy of substance over form." *Chelsea Fam. Pharm'y, PLLC, 567 F.3d at 1198*. **HN8** This approach "prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." *Id.*

We acknowledge that some of Ms. Vaughn's claims, like her state-law claims for negligent infliction of emotional distress and defamation, for example, may seem further afield from her business at the bank than other claims, such as the one for violations of *42 U.S.C. § 1981*—a statute that provides a remedy for racial discrimination in the context of contractual relationships, including banking relationships. *See, e.g., Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 268 (3d Cir. 2010)* (analyzing **[*15]** "lending discrimination claims" brought under *§ 1981*). However, the controlling precedent instructs us to focus on the factual circumstances that gave rise to Ms. Vaughn's complaint rather than the different legal theories that arise from those factual

circumstances.

Recall that the critical language in the DAA arbitration clause is: "any dispute relating in any way to your account or transactions." Aplts.' App. at 118. Accordingly, for any of Ms. Vaughn's claims to fall outside the scope of the arbitration clause, the factual underpinnings of those claims must not "relate in any way" to her accounts or transactions. It would not be enough to say, for instance, that her negligent infliction of emotional distress and defamation *claims* do not "relate in any way" to the subject matter of her account or her transactions. Instead, we must carefully examine the factual allegations underlying Ms. Vaughn's individual claims in determining whether those allegations fall within the ambit of the arbitration provision at issue; if so, her claims are subject to arbitration. And that is our conclusion here. All Ms. Vaughn's factual allegations are part of the same incident at the Chase branch, and in our **[*16]** view, that incident—from its beginning until its end—relates to Ms. Vaughn's accounts or transactions involving her account. In sum, our analysis focuses on whether the various factual components of this incident with Ms. Pelech at the bank relate in any way to Ms. Vaughn's account or transactions, and we conclude that they do.

There are multiple ways in which a particular factual situation can be said to "relate to" a subject. In *People v. Berry*, the Colorado Supreme Court interpreted the phrase "relating to" to mean "made possible because of." *2020 CO 14, 457 P.3d 597, 602 (Colo. 2020)*. In *Chelsea Family Pharmacy, PLLC*, we held that the plaintiff's claims that it was not being reimbursed at the legally required rate "relate[d] to payments" (and were therefore within the scope of the arbitration clause) because reimbursements were a sub-type of payments. *567 F.3d at 1199*.

Further, in *P & P Industries, Inc.*, we determined that a plaintiff's tort claim for interference with third party contracts arose out of,[6] or "relate[d] to" the defendant's termination of the agreement because the allegedly tortious conduct was factually part of the "manner" of the termination and occurred "at the time [the defendant] terminated the . . . Agreement." *179 F.3d at 871-72* (omission **[*17]** in original). We explained that **HN9** "all

---

[6] **HN10** As we stated in *Chelsea Family Pharmacy, PLLC*, "'relating to' is broader than 'arising out of.'" *567 F.3d at 1199 n.9*. Therefore, our cases that interpret the phrase "arising out of or relating to" are instructive for interpreting of the language "relating to."

claims with 'a significant relationship to the [Agreement,] regardless of the label attached' to them, arise out of and are related to the Agreement." *Id. at 871* (alteration in original) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996)*); *see also Hicks v. Cadle Co., 355 F. App'x 186, 193 (10th Cir. 2009)* (explaining that an arbitration clause covering claims "arising out of or relating to" the parties' loan agreement encompassed claims for intentional infliction of emotional distress and defamation because the underlying conduct was taken in response to the plaintiff's actions in a dispute over loan obligations).[7] Finally, Black's Law Dictionary defines "relate" as, *inter alia*, "[t]o have some connection to; to stand in relation to[;] . . . [t]o originate in some past event; to have a connection with some antecedent occurrence."[8] *Relate*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Moreover, the arbitration clause here contains additional plain language that makes it abundantly clear that the clause is intended to apply as extensively as possible. Specifically, this language in the DAA clarifies that the clause applies to claims "regardless of what theory they are based on or whether they seek legal or equitable remedies" and **[*18]** "whether they arose in the past, may currently exist or may arise in the future." Aplts.' App. at 118. Indeed, the inclusion of only one exception concerning small claims court further supports our interpretation that the parties intended the clause to have a comprehensive scope. *Cf*. ANTONIN SCALIA & BRYAN A. GARNER, READING THE LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) (discussing the "negative-implication canon" of construction and particularly observing that "the principle that specification of the one implies the exclusion of the other validly describes how people express themselves and understand verbal expression").

---

[7] *HN11* We rely on unpublished cases for their persuasive value only and do not treat them as binding precedent. *See United States v. Engles, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015)*.

[8] *HN12* "Courts have generally interpreted language such as 'arising from or in connection with' quite expansively." *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC, 12 F.4th 1212, 1220 (10th Cir. 2021)*. Furthermore, our circuit has explicitly stated, "[t]o say that a dispute is one 'arising from or in connection with [a topic]' is to say that it had some causal connection to—that it originated from, grew out of, or flowed from—such [topic]." *Id.*

Based on the guidance from these legal authorities, we conclude that the factual allegations underpinning all of Ms. Vaughn's claims "relate to" (as well as arise from) her account or transactions within the meaning of the DAA arbitration clause. It ineluctably follows that her claims also "relate to" her account or transactions. As Defendants point out, Ms. Vaughn freely admits she entered the bank to engage in transactions as an account-holder, and she was engaged in accessing her account when the factual incident upon which her claims are based occurred. **[*19]** The incident took place "at the time" that Ms. Vaughn was attempting to engage in transactions involving her account. *P & P Indus., Inc., 179 F.3d at 872*. And although we acknowledge the dissent's view that Ms. Pelech's call to the police and alleged falsehoods lack any relationship to the DAA arbitration clause, our prior interpretation of the "relating to" and "arising out of" language suggests otherwise.[9]

Specifically, all Ms. Vaughn's interactions during the incident at the bank have "some causal connection to" her Chase account or transactions involving that account—but for possessing the Chase account or wishing to engage in transactions involving it, Ms. Vaughn would not have been in the bank to suffer Ms. Pelech's allegedly discriminatory and defamatory abuse. Accordingly, the factual circumstances of the Pelech incident relate to and arise from Ms. Vaughn's Chase

---

[9] The dissent also states that, "The arbitration clause refers only to financial disputes like 'transactions involving [the] deposit account, safe deposit box, . . . any related service . . .' or 'the advertising, . . . application for, or the approval or establishment' of the account. No customer could plausibly interpret this list of arbitrable matters to include a claim based on the alleged call to police or false accusation of a crime." Dissent at 10 (citation omitted). This is a reference to Section X of the DAA which contained a frequently asked questions portion; one of the questions was, "What claims or disputes are subject to arbitration?" And it is noteworthy that part of the answer to that question is the following: "Any claims or disputes *arising from or relating to* this agreement . . . are also included." Aplts.' App. at 118 (Deposit Account Agreement and Privacy Notice, filed Oct. 11, 2023) (emphasis added). As discussed herein, we conclude that the factual circumstances underlying Ms. Vaughn's claims clearly arise from and relate to her agreement with Chase—more specifically, her Chase account or transactions involving it. In that regard, we cannot forget that the arbitration provision clearly states, "[y]ou and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court)." *Id.*

account or transactions related to it, and it necessarily follows that Ms. Vaughn's claims—which are predicated on those factual circumstances—do as well. Accordingly, those claims are subject to the DAA arbitration clause. *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC, 12 F.4th 1212, 1220 (10th Cir. 2021)*.

In sum, we conclude that the factual circumstances underlying all of Ms. Vaughn's claims unambiguously **[\*20]** relate to both her Chase account or her account transactions and accordingly so do her claims themselves. Thus, those claims fall within the ambit of the DAA arbitration clause.[10]

---

[10] In so concluding, we do not mean to suggest that arbitrability is determined on a complaint-by-complaint basis. *HN13* As *Cocchi* makes clear, a complaint can contain both arbitrable and nonarbitrable claims. *565 U.S. at 19*.

One such example is when a complaint contains several claims, all of which fall within the scope of an arbitration clause. Nevertheless, because the statute on which one of the claims relies contains a clear anti-arbitration clause, that claim would not go to arbitration along with the others. *See Daly v. Citigroup Inc., 939 F.3d 415, 422, 424 (2d Cir. 2019)* ("The only question that remains then is whether Congress intended for any of the plaintiff's federal statutory claims to be nonarbitrable as a matter of law . . . . The plaintiff's [Sarbanes-Oxley Act] whistleblower claim cannot save her otherwise arbitrable claims from their fate. The district court therefore correctly compelled arbitration of all of the plaintiff's claims, with the exception of her [Sarbanes-Oxley Act] claim, which it properly determined to be nonarbitrable.").

Another such example is when a complaint contains claims against a party with which the plaintiff has a binding arbitration agreement *and* claims against a party with which the plaintiff has no such agreement. Generally, the plaintiff's claims against the first defendant (that are within the scope of the arbitration agreement) would go to arbitration; but the plaintiff's claims against the second defendant would not. *See Bufkin v. Scottrade, Inc., 812 F. App'x 838, 845 (11th Cir. 2020)* (explaining that since the plaintiff and one defendant "agreed in writing that any dispute between them would be subject to arbitration," the claims between those two parties should go to arbitration but the claims between the plaintiff and other defendant with which plaintiff had not entered into an arbitration agreement should not).

But we determine-for the reasons explicated *supra*-that *all* Ms. Vaughn's claims are subject to arbitration because their factual underpinnings unambiguously fall within the scope of the arbitration agreement. Therefore, though we recognize, like the dissent, the need to separately consider the arbitrability of each of Ms. Vaughn's claims, because those claims all rest on the same universe of facts, we conclude, unlike the dissent,

Ms. Vaughn argues that her claims resemble the plaintiff's in our unpublished order and judgment in *Cavlovic v. J.C. Penney Corp., Inc., 884 F.3d 1051 (10th Cir. 2018)* (unpublished). In that case, we determined that the plaintiff's claims about J.C. Penney falsely inflating original prices and subsequently marking them down to give customers the impression that they were receiving a steep discount were outside the scope of the arbitration clause contained in the parties' rewards program agreement. *See id. at 1060*. Relying on *Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511 (10th Cir. 1995)*, we noted that it was "simply fortuitous that the parties happened to have a contractual relationship" with a generic arbitration clause at the time of the alleged wrong, but that contractual relationship did not dictate the terms of a dispute over unrelated conduct by J.C. Penney. *See Cavlovic, 884 F.3d at 1060* (quoting *Coors Brewing Co., 51 F.3d at 1516*). Relatedly, in *Coors Brewing Co.*, we held that certain antitrust claims, which concerned broad market behavior and could be alleged by any competitor, were outside the scope of a specific licensing agreement's arbitration clause. *See Coors Brewing Co., 51 F.3d at 1516*. But Ms. Vaughn's **[\*21]** reliance on *Cavlovic*—and by extension, *Coors Brewing Co.*—is misplaced.

To be sure, at first blush, Ms. Vaughn's claims might appear to strike a common chord with these two cases to the extent that one focuses, in insolation, on the arguably different character of the racially discriminatory factual incident underlying her claims—i.e., her confrontation with Mr. Pelech—and her banking, contractual relationship with Chase, which includes the arbitration agreement. After all, unprompted, in-person, racial discrimination certainly sounds different than banking fees and accounts. Upon closer inspection, however, Ms. Vaughn's claims do *not* resemble the plaintiffs' claims in *Cavlovic* or *Coors Brewing Co.*, and those cases are inapposite.

As explained *supra*, Ms. Vaughn's claims stem from an incident that occurred while she was attempting to perform transactions in her capacity as a Chase account-holder. Specifically, Ms. Pelech is alleged to have engaged in the racially discriminatory conduct underlying Ms. Vaughn's claims in response to Ms. Vaughn attempting to do business related to her account—the kind of business expressly covered by the arbitration clause. On the other hand, in *Cavlovic* **[\*22]** and *Coors Brewing Co.*, as to the facts underlying their

---

that the same arbitrability determination applies to all of them. Specifically, they are all subject to arbitration.

claims, the plaintiffs were interacting with the defendants essentially as members of the public (i.e., as third parties to a contractual relationship with the defendants), and the defendants then attempted to use separate, preexisting "fortuitous . . . contractual relationship[s]" between the parties involving arbitration agreements to force arbitration. *Coors Brewing Co., 51 F.3d at 1516*.

However, unlike in *Cavlovic* and *Coors*, there was nothing "fortuitous" about Ms. Vaughn's contractual relationship with Chase relative to the factual incident underlying her claims or about her presence at the Chase branch at the time that incident took place. Rather, Ms. Vaughn's presence at Chase and the subsequent incident with Ms. Pelech stemmed directly from her contractual relationship with Chase. Therefore, we find *Cavlovic* and *Coors Brewing Co.* inapposite; neither can help Ms. Vaughn here.

To sum up then, the factual incident underlying all of Ms. Vaughn's claims relates to her status as a Chase account-holder or her attempt to engage in transactions related to her Chase account. Consequently, each of Ms. Vaughn's claims in her complaint necessarily also arise from and relate to her Chase account or her account-related transactions. And the upshot of all of this is that those claims fall within the plain terms of the DAA arbitration clause.

## IV

We conclude that all of Ms. Vaughn's claims are encompassed by the arbitration clause that she agreed to with Chase. Accordingly, we **REVERSE** the district court's order denying Defendants' motion to compel arbitration **[\*23]** and **REMAND** the case so Ms. Vaughn's claims may be arbitrated pursuant to the arbitration clause.

Entered for the Court

Jerome A. Holmes

Chief Judge

**Concur by:** BACHARACH (In Part)

**Dissent by:** BACHARACH (In Part)

## Dissent

**BACHARACH**, J., concurring in part in the judgment and dissenting in part.

This appeal involves an arbitration clause for claims related to a customer's contract with a bank. Sometimes this kind of arbitration clause is easy to interpret. For example, when a customer opens a bank account and claims an inability to conduct a bank transaction because of discrimination, the claim can plausibly relate to the bank contract. But not if the customer enters the bank and seeks damages for actions and injuries unrelated to the contract.

### 1. Ms. Jeanetta Vaughn agrees to arbitrate claims related to the account or transactions.

A bank (JP Morgan Chase Bank) entered a contract with a Black woman, Ms. Jeanetta Vaughn. The contract contained an arbitration clause with two pertinent provisions. The first stated that the parties would arbitrate "any dispute relating in any way to [Ms. Vaughn's] account or transactions." The second provision answered possible questions about arbitrability, addressing potential claims between **[\*24]** Ms. Vaughn and the bank about transactions involving her account. *Id.*

### 2. The bank's branch manager allegedly kicks Ms. Vaughn out of the bank before she can make a transaction.

A few years after opening the account, Ms. Vaughn entered the bank to make a transaction. What happened next is disputed, but the parties agree that we must rely on Ms. Vaughn's allegations in the complaint. There Ms. Vaughn alleges that

- she had sat down to unlock her bank card and

- the branch manager called the police and complained of trespass, resulting in harassment of Ms. Vaughn and her inability to conduct a transaction.

Based on these allegations, Ms. Vaughn claimed

- race discrimination under *42 U.S.C. § 1981* and the *Colorado Anti-Discrimination Act, C.R.S. § 24-34-601 et seq.*,

- defamation, and

- negligent infliction of emotional distress.

For these claims, the parties disagree on the applicability of the arbitration clause. The district court ruled that none of the claims are subject to arbitration. For that ruling, we must conduct de novo review. *Reeves v. Enter. Prods. Partners, LP, 17 F.4th 1008, 1011 (10th Cir. 2021)*. Conducting that review, the majority agrees with the district court's rulings on arbitrability.

I would take a different approach and confine arbitrability to the race-discrimination claims. I thus concur in part as to the outcome and **[*25]** dissent in part.

**3. The Supreme Court has implicitly abrogated our test for a presumption of arbitrability**.

The parties agree that some claims are presumptively subject to arbitration. In the past, we have based this presumption on the breadth of the arbitration clause, using a three-part inquiry. *Cummings v. FedEx Ground Package Sys., Inc., 404 F.3d 1258, 1261 (10th Cir. 2005)*. Our threshold inquiry would involve classification of the arbitration clause as broad or narrow. *Id.* If the clause were narrow, we would determine whether the disputed matter facially lay within the purview of the arbitration clause. *Id.* If the arbitration clause were broad, we would presume arbitrability. *Id.* Under that presumption, even collateral matters would be considered arbitrable if the claim involved contract construction or the parties' rights and obligations under the contract. *Id.*

Years later, however, the Supreme Court addressed the presumption of arbitrability in *Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287, 301, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)*. There the Court said that arbitration is presumed "only" when a validly formed arbitration agreement is ambiguous. *Id.*[1]

The resulting question is whether we can continue to apply our case law presuming arbitrability when the arbitration clause is broad. To answer that question, we would ordinarily follow our own case **[*26]** law. *See*

---

[1] The Supreme Court also clarified that before addressing the scope of an arbitration clause, the district court must make sure that the contract was validly formed before addressing the scope of an arbitration clause. *Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299-300, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)*. Here, however, the parties agree that the contract was validly formed.

*United States v. Lira-Ramirez, 951 F.3d 1258, 1260 (10th Cir. 2020)* ("We must generally follow our precedents absent en banc consideration."). But we must abandon that case law when the Supreme Court has "indisputably and pellucidly" rejected the foundation underlying our precedent. *Vincent v. Bondi, 127 F.4th 1263, 1264 (10th Cir. 2025)*; *see also Atl. Richfield Co. v. NL Indus., Inc., 132 F.4th 1220, 1225 (10th Cir. 2025)* (stating that "the Supreme Court has unambiguously abrogated our precedent by rejecting its foundation"); *United States v. Venjohn, 104 F.4th 179, 187 (10th Cir. 2024)* (stating that a Supreme Court holding "abrogates our precedents . . . because it fatally undermines an unchallenged foundation in those cases").

The Supreme Court has indisputably and pellucidly abrogated our three-part test for a presumption of arbitrability. Though we had based the presumption on breadth of the broad arbitration clause, the Supreme Court later said that the presumption applies "only" when the arbitration clause is ambiguous. *Granite Rock, 561 U.S. at 301*; *see Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp., 67 F.4th 107, 112-14 (2d Cir. 2023)* (acknowledging that the Second Circuit's prior precedents, basing a presumption of arbitration on a broad arbitration clause, were abrogated under *Granite Rock*); *see also Brent Elec. Co. v. Int'l Bhd. of Elec. Workers Loc. Union No. 584, 110 F.4th 1196, 1211-12 (10th Cir. 2024)* (applying the *Granite Rock* test, presuming arbitrability only when the arbitration clause is ambiguous). The Supreme Court's new test for the presumption abrogates our earlier approach, which had relied on breadth of the arbitration **[*27]** clause rather than its ambiguity. Under the Supreme Court's new test, we begin by considering ambiguity of the arbitration clause.

**4. The applicability of the arbitration clause is ambiguous only on the race-discrimination claims**.

To assess possible ambiguity, we must separately consider Ms. Vaughn's claims. *See KPMG LLP v. Cocchi, 565 U.S. 18, 19, 132 S. Ct. 23, 181 L. Ed. 2d 323 (2011)* (per curiam) (stating that courts must carefully examine the complaint "in order to separate arbitrable from nonarbitrable claims"). These claims involve race discrimination, defamation, and negligent infliction of emotional distress. So we must examine the factual allegations underlying each claim. *See Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc., 567 F.3d 1191, 1197-98 (10th Cir. 2009)* (stating that we determine arbitrability under the Federal Arbitration Act

by evaluating "the factual underpinnings of the complaint").

**a. The arbitration agreement plausibly covers the race-discrimination claims**.

Using the Supreme Court's test, we consider whether the arbitration clause is ambiguous on the race-discrimination claims. *See* p. 3, above. To determine ambiguity, we generally apply state law, *First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)*; and the parties agree that Colorado law applies. Under Colorado law, we interpret the arbitration clause to discern the parties' intent. *French v. Centura Health Corp., 2022 CO 20, 509 P.3d 443, 449 (Colo. 2022)*. When the parties' intent isn't clear, we regard the clause **[*28]** as ambiguous. *Id.*

Ms. Vaughn argues that the arbitration clause is generally ambiguous. The defendants disagree, arguing that the arbitration clause unambiguously covers all of Ms. Vaughn's claims. In my view, the arbitration clause is ambiguous as to whether it covers the race-discrimination claims.

Granted, the arbitration clause doesn't refer to claims of race discrimination. In fact, the clause gives examples of arbitrable claims and all of these examples involve financial disputes.

But Ms. Vaughn alleges in the complaint that the race discrimination affected her ability to conduct transactions with the bank. For example, she alleges that the discrimination

• prevented her from fully and equally enjoying the bank's services and

• deprived her "of the right to enjoy all the benefits, privileges, terms, and conditions of her contractual relationship as a [bank] member."

Appellant's App'x at 38. These allegations thus relate partly to Ms. Vaughn's contract with the bank. So the arbitration clause is at least ambiguous with respect to the race-discrimination claims.

Given this ambiguity of the arbitration clause, Ms. Vaughn must present "positive assurance" that the parties did not intend **[*29]** to arbitrate the race-discrimination claims. *Nat'l Nurses Org. Comm., Missouri & Kansas/Nat'l Nurses United v. Midwest Div. MMC, LLC, 70 F.4th 1315, 1318-19 (10th Cir. 2023)*. That assurance requires "forceful evidence that the

parties intended to exclude the [claims] from arbitration." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union & its Loc. 13-857 v. Phillips 66 Co., 839 F.3d 1198, 1205 (10th Cir. 2016)*.

The only evidence of the parties' intent came from the defendants. That evidence consisted of declarations by executives about the creation of the underlying contract, its updating, and a way for customers to opt out. Ms. Vaughn says that these declarations don't suggest an intent to arbitrate the race-discrimination claims. She's right because the executives weren't discussing the scope of the arbitration clause.

But the burden of proof didn't fall on the defendants. To the contrary, Ms. Vaughn bore the burden of presenting *forceful evidence*. *See* pp. 6-7, above. And she presented no evidence of an intent to exclude the race-discrimination claims from arbitration. Ms. Vaughn thus failed to satisfy her burden.

Though Ms. Vaughn didn't satisfy her burden, she argues that defense counsel conceded that the arbitration provision wouldn't apply. Ms. Vaughn forfeited this argument by failing to present it in district court. *See Ave. Cap. Mgmt. II, L.P. v. Schaden, 843 F.3d 876, 885 (10th Cir. 2016)* ("An appellant forfeits an argument by failing to preserve it in district court.").

But the argument would **[*30]** fail even without the forfeiture. Defense counsel didn't concede the inapplicability of the arbitration clause. Counsel was simply asked whether the arbitration clause would apply if a bank teller assaulted a customer. Defense counsel responded by questioning whether the teller's conduct would fall within the scope of employment. But this response didn't address applicability of the arbitration clause. So defense counsel didn't concede the inapplicability of the arbitration clause when a teller is assaulted.

* * *

Absent such a concession, I would conclude that the clause is at least ambiguous on arbitrability of the race-discrimination claims. This ambiguity triggers a presumption of arbitrability, which Ms. Vaughn failed to overcome with forceful evidence. So the race-discrimination claims are arbitrable.

**b. The arbitration clause doesn't plausibly cover the claims of defamation and negligent infliction of**

**emotional distress**.

Ms. Vaughn asserts claims not only of race discrimination, but also of defamation and negligent infliction of emotional distress. For these claims, the defendants make no argument about the applicability of the arbitration clause, stating without explanation that **[*31]** all the claims "touch" the contract. Appellant's Opening Br. at 27. With no explanation by the appellant, we wouldn't ordinarily reverse. *See United States v. Tee, 881 F.3d 1258, 1269 (10th Cir. 2018)* (stating that we ordinarily confine ourselves to the appellant's arguments for reversal). Nonetheless, the majority reverses on these claims, treating them as indistinguishable from the race-discrimination claims. But the claims can't be lumped together.

Unlike the race-discrimination claims, the claims of defamation and negligent infliction of emotional distress unambiguously fall outside the arbitration clause. This clause confines arbitration to disputes relating to Ms. Vaughn's account or transactions.

The language is undoubtedly broad. But the requirement of a relationship provides at least some limit. *See Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218 (11th Cir. 2011)* (stating that "'related to' marks a boundary by indicating some direct relationship; otherwise the term would stretch to the horizon and beyond"); *see also N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995)* (noting that if the phrase "'relate to' were taken to extend to the furthest stretch of its indeterminacy," it would be meaningless because "relations stop nowhere" (quoting H. James, Roderick Hudson xli (N.Y. ed., World's Classics 1980))).

To determine the plausibility of a relationship **[*32]** to the contract, we must view the allegations in the complaint. There Ms. Vaughn bases

- the claim of negligent infliction of emotional distress on the impact of her confrontation with the police and

- the claim of defamation on the bank manager's false accusation of "criminal misconduct" and "aggressive behavior."

These allegations bear no relationship to Ms. Vaughn's account or her transactions.

The arbitration clause refers only to financial disputes like "transactions involving [the] deposit account, safe deposit box, . . . any related service" or "the advertising, . . . application for, or the approval or establishment" of the account. *Id.* No customer could plausibly interpret this list of arbitrable matters to include a claim based on the alleged call to police or false accusation of a crime. The arbitration clause thus unambiguously excludes the allegations underlying the claims of defamation and negligent infliction of emotional distress.

Granted, Ms. Vaughn might have been present in the bank because of her contract. But her claims of defamation and negligent infliction of emotional distress don't involve the account or Ms. Vaughn's inability to conduct a bank transaction. Instead, **[*33]** these claims stem from the branch manager's alleged call to the police and statement to a police officer that Ms. Vaughn had committed a crime. *See Calderon v. Sixt Rent a Car, LLC, 5 F.4th 1204, 1212-13 (11th Cir. 2021)* (explaining that a dispute "does not arise out of or in connection with a contract" for arbitration purposes "just because the dispute would not have arisen if the contract had never existed"). Ms. Vaughn would have had the same claims if she had an account elsewhere. "[I]t is simply fortuitous that the parties happened to have a contractual relationship." *Cavlovic v. J.C. Penney Corp., 884 F.3d 1051, 1060 (10th Cir. 2018)* (not precedential)[2] (quoting *Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1516 (10th Cir. 1995)*).

The fortuitous nature of the contractual relationship dictated our assessment of arbitrability in *Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511 (10th Cir. 1995)*. There two businesses entered into a distributorship contract containing an arbitration clause encompassing disputes arising in connection with their contract. *Id. at 1512-13*. The issue for us was whether antitrust claims fell within the arbitration clause. *Id.* We concluded that even if the arbitration clause had included antitrust disputes, some of the claims would not have been arbitrable. *Id. at 1515-16*. We explained that if two small business owners had entered into a sales contract with an arbitration clause and one owner assaulted the **[*34]** other, the contract would obviously not require

---

[2] *Cavlovic* was inadvertently published in *Federal Third*. The Court titled the document an *order and judgment* and stated that it would not be binding. *884 F.3d 1051, 1051 n.* & 1052 (10th Cir. 2018)*. So the opinion isn't precedential. *See United States v. Thornton, 846 F.3d 1110, 1116 n.2 (10th Cir. 2017)* (stating that we would not consider ourselves bound by an order and judgment that was inadvertently filed in the Federal Reporter).

arbitration of a tort claim because it wouldn't have related to the sales contract. *Id. at 1516*. The existence of the contractual relationship would have been fortuitous. *Id.* As a result, the claimant couldn't squeeze its antitrust claims into the arbitration clause unless those claims related to the underlying contract. *Id.*

Other circuits have addressed similar efforts to shoehorn claims into an arbitration clause when the parties were present because of a contractual relationship. In each instance, the arbitration clause was broad and the dispute resulted from some contractual relationship. But the circuit courts uniformly concluded that the claims didn't "arise from" or "relate to" the contract.

*Go to table1*

For instance, in *Doe v. Princess Cruise Lines*, the arbitration clause required arbitration of claims "relating to or in any way arising out of or connected with the [Employment] Agreement, these terms, or services performed for the [employer]." *657 F.3d 1204, 1215 (11th Cir. 2011)*. The court needed to determine whether this clause applied when an employee had sued her employer for failing to prevent a sexual assault on a cruise ship. The employer pointed out that

• the employee had been on the cruise ship only because of the employment contract and

• the arbitration clause was broad, covering all claims "relating to or in any **[*37]** way arising out of or connected with" the employment contract.

*Id. at 1217*.

The Eleventh Circuit concluded that the broad language wasn't enough to require arbitration even though the contract had resulted in the employee's presence on the cruise ship. *Id. at 1219-20*. The court recognized the need to broadly interpret the arbitration clause, but not "at the expense" of the needed relationship between the employee's claim and the contract. *Id. at 1217-18*.

The employee's claim in *Princess Cruise Lines* had nothing to do with the employment contract, and Ms. Vaughn's claims of defamation and negligent infliction of emotional distress have nothing to do with her bank account or transactions. She might have entered the bank because of her contract, just as the employee had boarded the cruise ship in *Princess Cruise Lines* because of her employment agreement. But the claim there involved sexual assault, not a dispute over the

terms in the employment agreement. And Ms. Vaughn's claims of defamation and negligent infliction of emotional distress relate to the branch manager's alleged call to the police and false statements, not a dispute over contract terms.[3] As a result, Ms. Vaughn's claims of defamation and negligent infliction of emotional distress don't plausibly **[*38]** relate to the account or a transaction.

The majority disagrees, concluding that the alleged defamation and negligence took place when Ms. Vaughn was trying to conduct business relating to her account. Maj. Order and Judgment at 16-18. But the alleged defamation and infliction of emotional distress took place when the branch manager called the police and made false statements—not when the branch manager failed to perform a contractual obligation. Even if bank personnel had done everything required under the contract, Ms. Vaughn would have had the same claims of defamation and negligent infliction of emotional distress. So these claims rest on allegations bearing only a fortuitous connection to Ms. Vaughn's contract with the bank.

The fortuitous nature of that connection drove our decision in *Cavlovic v. J.C. Penney Corp., 884 F.3d 1051 (10th Cir. 2018)* (not precedential); *see* p. 11 n.2 (explaining why *Cavlovic* wasn't precedential even though it was published). There a J.C. Penney customer allegedly had a rewards contract containing an arbitration clause. *Cavlovic, 884 F.3d at 1055*. She earned rewards under this contract when buying merchandise from J.C. Penney. *Id. at 1053-54*. After buying the merchandise, the customer sued, claiming that J.C. Penney had committed fraud when advertising **[*39]** prices. *Id. at 1053*.

J.C. Penney argued that the claim related to the rewards contract (containing the arbitration clause) because the customer had obtained the contractual rewards when buying the merchandise. *Id. at 1060*. We rejected this argument, reasoning that the rewards contract bore only a fortuitous connection to the claim because J.C. Penney's compliance with the contract wouldn't have affected the customer's allegations. *Id.*[4]

---

3  At oral argument, the defendants insisted that Ms. Vaughn had incorporated her other allegations into her claims of defamation and negligent infliction of emotional distress. But the defendants had not made this argument either in district court or in their appeal briefs; oral argument was too late. See United States v. Anthony, 22 F.4th 943, 952 (10th Cir. 2022) ("We do not consider arguments raised for the first time at oral argument.").

4  Though Cavlovic isn't precedential, it's persuasive given the analysis to determine when the relationship of a claim to a contract is fortuitous.

This reasoning fits Ms. Vaughn's allegations. She might have been in the bank because of her contract. If so, she would resemble the customer in *Cavlovic*, who earned J.C. Penney rewards with her purchase. But the *Cavlovic* customer's claim didn't involve her rewards account; the claim related to J.C. Penney's advertisement of prices for specific merchandise.

Similarly, Ms. Vaughn's claims of defamation and negligent infliction of emotional distress don't relate to her bank contract: Those claims stem from the branch manager's alleged call to police and false accusation of a crime. In the complaint, Ms. Vaughn alleges that

- "[the branch manager's] conduct . . . was negligent because she called the police falsely claiming that Ms. Vaughn was acting 'aggressively' and videotaping **[*40]** the inside of the Branch and, therefore, was trespassing,"

- "Ms. Vaughn's fear [from the police interaction] resulted in long-continued emotional disturbance,"

- "[c]ontrary to [the branch manager's] 911 call, Ms. Vaughn was not criminally trespassing or acting aggressively or in a threatening manner," and

- "[the branch manager] falsely accused [Ms. Vaughn] of engaging in criminal misconduct and threatening 'aggressive' behavior."

*Id.* at 65-66, 68.

These allegations don't involve Ms. Vaughn's account or her inability to complete a bank transaction. After all, Ms. Vaughn would have had precisely the same claims even if the defendants had complied with the contract. As a result, the alleged wrong bore only a fortuitous connection to the underlying contract—just like the connection in *Cavlovic*. In my view, then, the claims of defamation and negligent infliction of emotional distress don't plausibly relate to Ms. Vaughn's contract with the bank. Because the arbitration clause unambiguously lacks any relationship to the branch manager's alleged call to the police and false accusation of a crime, the claims of defamation and negligent infliction of emotional distress are not arbitrable.

**5. I [*41]  would require arbitration only for the race-discrimination claims**.

Ms. Vaughn had a contract that allowed her to conduct transactions with the bank. Based on that contract, she alleges that she couldn't complete a transaction because of race discrimination. So her race-discrimination claims are arbitrable.

But the same isn't true of the claims involving defamation and negligent infliction of emotional distress; these claims lack any plausible relationship to Ms. Vaughn's contract with the bank. So these claims aren't arbitrable.

2025 U.S. App. LEXIS 31931, *41

**Table1 (**_Return to related document text_**)**

| Case | Arbitration Clause | Holding |
|---|---|---|
| _Anderson v. Hansen, 47 F.4th 711 (8th Cir. 2022)_ | "Any dispute arising under or related in any way to this [Employment] Agreement." _47 F.4th at 713_. | Tort claims based on sexual assault were not related to the plaintiff's employment even though the plaintiff might have been present only because of her employment contract. _47 F.4th at 718_. |
| _Cooper v. Ruane Cunniff & Goldfarb Inc., **[*35]** 990 F.3d 173 (2d Cir. 2021)_ | "All legal claims arising out of or relating to employment, application for employment, or termination of employment." _990 F.3d at 178_. | A claim alleging breach of fiduciary duty against an employer-controlled retirement portfolio was not connected to employment even though the plaintiff's stake in the retirement portfolio had been part of his employee compensation package compensation package and had created standing. _990 F.3d at 182-84_. |
| _United States ex rel. Welch v. My Left Foot Children's Therapy LLC, 871 F.3d 791 (9th Cir. 2017)_ | "All disputes that may arise out of the | A claim under the False Claims Act was |

2025 U.S. App. LEXIS 31931, *35

| Case | Arbitration Clause | Holding |
|---|---|---|
| | arise out of the employment context [, including] . any claim, dispute, and/or controversy . arising from, related to, or having any relationship or connection whatsoever with my seeking employment by, or employment or other association with the Company." *871 F.3d at 794*. | False Claims Act was not connected to the plaintiff's employment even though the plaintiff had observed the pertinent conduct while employed. *871 F.3d at 797-800*. |
| *Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204 (11th Cir. 2011)* | "[A]ny and all disputes, claims, or controversies relating to or in any way arising **[*36]** out of or connected with the Agreement, these terms, or services performed for the Company." *657 F.3d at 1214-15*. | The plaintiff's claims involving a sexual assault were unrelated to employment even though the plaintiff had been present only because of her employment and the arbitration clause was broad. *657 F.3d at 1219-20*. |
| *Jones v. Halliburton Co., 583 F.3d 228 (5th Cir. 2009)* | "Any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim[s] arising | The plaintiff's claims involving a sexual assault were unrelated to employment even though the plaintiff had been present only because of her employment. *583 F.3d at 240-41*. |

2025 U.S. App. LEXIS 31931, *36

| Case | Arbitration Clause | Holding |
|------|-------------------|---------|
|  | in the workplace."<br>*583 F.3d at 231.* |  |

**Table1 (*Return to related document text*)**

---

End of Document