**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DINAH YUKICH<br><br>        Plaintiff,<br><br>   v.<br><br>MILES CHAMLEY-WATSON, USA FENCING ASSOCIATION, JESSICA SAXON, CREATE A LEGACY NOT A MOMENT, INC., and SHANNON DAUGHERTY<br><br>        Defendants. | No. 2:26-cv-8140-KSH-AME |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION TO REMAND</u>**

## TABLE OF CONTENTS

Page(s)

I.    Introduction ................................................................................... 6

II.   Background ..................................................................................... 7

III.  Standard .......................................................................................... 9

IV.   Argument ...................................................................................... 11

    A.  Remand Is Required For The Independent Procedural Defect: The Removal Was Not Unanimous .................................................... 11

    B.  No Federal Question Appears On The Face Of The Well-Pleaded Complaint ................................................................................... 13

    C.  This Case Is Not Among The "Special And Small Category" Of State Law Cases That Turn On A Necessary And Substantial Federal Issue ............ 14

        1.  The Complaint Does Not "Necessarily Raise" Any Federal Questions .......................................................... 14

        2.  No Federal Issues Are "Actually Disputed" In Plaintiff's Complaint ...................................................... 15

        3.  No Federal Questions Are "Substantial" ........................................... 15

        4.  Antidiscrimination Law Is A Core State Police Power That Would BE Disrupted By Preempting State Court Jurisdiction ............................ 18

    D.  Plaintiff's Claims Are Not Completely Preempted By A Federal Law .... 19

V.    Conclusion ................................................................................... 23

## TABLE OF AUTHORITIES

### CASELAW

Page(s)

*Behagen v. Amateur Basketball Association of the United State of America et al.*,
884 F.2d. 524 (10th Cir. 1989) ..................................................................... 22, 23

*Michaels v. State of N.J.*,
955 F.Supp. 315 (D.N.J. 1996) ..................................................................... 11, 12

*Aqua-Gulf Transp.*,
2006 WL 3591291 (D.N.J. Dec. 11, 2006) ......................................................... 12

*Balazik v. County of Dauphin*,
44 F.3d 209 (3d Cir. 1995) ............................................................................... 11

*Beneficial Nat'l Bank v. Anderson*,
539 U.S. 1 (2003) ............................................................................................. 20

*Bennett v. USA Water Polo, Inc.*,
2009 WL 1089480 (S.D. Fla. Apr. 21, 2009) ..................................................... 21

*Boyer v. Snap-on Tools Corp.*,
913 F.2d 108 (3d Cir. 1990) ............................................................................... 9

*Cacoilo v. Sherwin-Williams Co.*,
902 F.Supp.2d 511 (D.N.J. 2012) ..................................................................... 12

*Caterpillar, Inc. v. Williams*,
482 U.S. 386, (1987) ..................................................................................... 11, 13

*Dawson ex rel. Thompson v. Ciba-Geigy Corp., USA*,
145 F.Supp.2d 565 (D.N.J. 2001) ..................................................................... 20

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006) ........................................................................................... 6

*Genelink Biosciences, Inc. v. Colby*,
722 F.Supp. 2d 592 (D. N.J. 2010) ................................................................. 9, 15

*Goldman v. Citigroup Glob. Markets Inc.*,
834 F.3d 242 (3d Cir. 2016) ......................................................................... 15, 17

*Gonzalez v. United States Ctr. for SafeSport*,
374 F.Supp.3d 1284 (S.D. Fla. 2019) ............................................................... 17

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
   545 U.S. 308 (2005) ............................................................................. 6, 10, 14, 15, 16

*Gunn v. Minton*,
   568 U.S. 251 (2013) ................................................................................. 6, 9, 10, 14, 16

*Hunter v. Greenwood Trust Co.*,
   856 F.Supp. 207 (D.N.J. 1992) ............................................................................. 10

*Johnson v. Mazie*,
   144 F.4th 146 (3d. Cir. 2025) ............................................................................. 14

*K.J. v. J.P.D.*,
   659 F. Supp. 3d 471 (D.N.J. 2023) ..................................................................... 13

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ............................................................................................ 17

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) .............................................................................................. 9

*Lewis v. Rego Co.*,
   757 F.2d 66 (3d Cir. 1985) ................................................................................. 11

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
   772 F.3d. 158 (3d. Cir. 2014) ....................................................................... 10, 14

*Merrell Dow Pharms. v. Thompson*,
   478 U.S. 804 (1986) ............................................................................................ 18

*Mersmann v. Cont'l Airlines*,
   335 F.Supp.2d 544 (D.N.J. 2004) ...................................................................... 11

*Michels v. USOC*,
   741 F.2d 155 (7th Cir. 1984) ............................................................................. 20

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*,
   388 F.3d 393 (3d Cir. 2004) ............................................................................... 19

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3d Cir. 2022) ............................................................................... 20

*Samuel-Bassett v. KIA Motors Am., Inc.*,
   357 F.3d 392 (3d Cir. 2004) ................................................................................. 9

4

*Slaney v. The Int'l Amateur Athletic Fed'n*,
  244 F.3d 580 (7th Cir. 2001) ................................................................. 21, 22

*Steel Valley Auth. v. Union Switch & Signal Div.*,
  809 F.2d 1006 (3d Cir. 1987) ....................................................................... 9

*Williams v. ProMedica Health Sys. Inc.*,
  24-1369, 2024 WL 4927258 (3d Cir. Dec. 2, 2024) ..................................... 16

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ................................................................................... 19

## STATUTES

28 U.S.C. § 1331.................................................................................. 10, 21
28 U.S.C. § 1441(a) ................................................................................... 9
28 U.S.C. § 1446(b)(2)(A) ..................................................................... 9, 11
36 U.S.C. §220501 ............................................................................... 17, 20
36 U.S.C. §220505 ....................................................................... 16, 17, 18, 20
36 U.S.C. §220505(b)(9) ............................................................... 16, 17, 18, 20
36 U.S.C. § 220501(b)(8) ......................................................................... 17
36 U.S.C. § 220521 ................................................................................. 17
36 U.S.C.A. §220524(b) .......................................................................... 18
36 USCA §220503(3) .............................................................................. 22
42 U.S.C. § 2000a................................................................................... 14
N.J.S.A. 10:5-2...................................................................................... 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

DINAH YUKICH

        Plaintiff,

    v.

MILES CHAMLEY-WATSON, USA
FENCING ASSOCIATION, JESSICA SAXON,
CREATE A LEGACY NOT A MOMENT,
INC., and SHANNON DAUGHERTY

        Defendants.

No. 2:26-cv-8140-KSH-AME

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO REMAND**

## I.    Introduction

This action should be remanded for four reasons. First, nothing on the face of the Removal shows that all defendants joined the removal petition. Second, Plaintiff pleaded only state law claims for which federal law makes no comparable provision. Accordingly, no federal issue appears on the face of the well-pleaded complaint. Defendants' removal theory is, in essence: "If we excluded Dinah Yukich from a public accommodation based on her sex, we were compelled to do so by federal law." That is, at best, a federal *defense* which does not support removal. There is no comparable federal law on sex discrimination from public accommodations. Third, there is no "necessary and substantial" federal issue that could support what the Supreme Court called a "special and small category" of state law cases that may be removed to Federal Court under the test laid out in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005); *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); clarified in *Gunn v. Minton*, 568 U.S. 251 (2013). Fourth, the state discrimination law is not completely

6

preempted by federal law. None of Plaintiff's claims requires construing a word of federal law.

## II.    Background

Plaintiff Dinah Yukich's ("Dinah's") Complaint alleges that she  was discriminated against when she was excluded from competing in the women's events at the Miles Cleveland Chamley-Watson World Cup ("Chamley-Watson Cup" or "Fencing Tournament") held in Atlantic City, New Jersey.  Dinah was prohibited from participating in the women's events because she is transgender.  The Chamley-Watson Cup is a Fencing Tournament presented by an entity called "Create a Legacy Not a Moment", which is owned and operated by Miles Chamley-Watson.  This tournament is open to the public, meaning members of the public could spectate and members of the public were invited to participate.

To remedy this breach of the New Jersey Law Against Discrimination ("NJLAD"), Dinah Yukich brought suit in state court against Miles Chamley-Watson, USA Fencing, Jessica Saxon, Create a Legacy Not a Moment, Inc., and Shannon Daugherty (together, "Defendants").

 Dinah brought claims under the NJLAD based on the fact that she was excluded from a place of public accommodation because she is a transgender woman.  Defendants removed this case to this Court claiming that the issue of exclusion from a place of public accommodation because of transgender status arises under the United States Constitution, laws or treaties of the United States.

Dinah's action was initiated in the Superior Court of New Jersey Law Division: Civil Part Atlantic County on May 19, 2026.  *See* docket at Exhibit A.  (Exhibit A, Doc.

7

No. [INSERT]).  On June 3, 2026, counsel entered their appearance for USA Fencing, Miles Chamley-Watson, Jessica Saxon and Shannon Daugherty.  *See* Exhibit B.  Plaintiff could not serve Defendant Create a Legacy Not a Moment. On June 17, 2026, Plaintiff filed a Motion for Alternative Service.  (Ex. A. Doc. No. [insert]).  On June 29, 2026, counsel for the other defendants represented to plaintiff's counsel that she had authority to accept service for Defendant Create a Legacy Not a Moment.  *See* correspondence attached at Exhibit C.  However, defense counsel did not enter an appearance for  Create a Legacy Not a Moment  in the Superior Court action.  *See* Ex. A.

On July 2, 2026,  Defendants Miles Chamley-Watson, USA Fencing Association, Jessica Saxon and Shannon Daugherty filed a Notice of Removal in the Law Division proceeding federal court claiming only Federal Issue jurisdiction.  *See*  Exhibit D.  The signature block at the top of the Notice of Removal indicates that counsel represented only those defendants, *not* Create a Legacy Not a Moment.  *See* Ex. D.  Even more, the Notice of Removal declares that only "Defendant USA Fencing Club filed a Notice of Removal…"[1]  *Id.* at p. 1-2.  The introductory paragraph of the Notice of Removal reads, "Defendant USA Fencing Association…by and through undersigned counsel, hereby removes this action…"  Ex. D at p. 1.  There is no reference to Create a Legacy Not a Moment, nor could there be, as petitioning counsel had not entered an appearance on behalf of Create a Legacy not a Memory in the state court action.  In fact, the *ad damnum* clause indicates that only USA Fencing is removing the action.  Ex. D.  It does not reference consent of Create a Legacy Not a Moment. That omission was necessary as defense counsel

---

[1] Plaintiff assumes that "USA Fencing Club" is a typographical error, as there is no defendant named USA Fencing Club.

could not have filed a Notice of Removal in the Law Division on behalf of a party for which counsel had not entered an appearance.

On July 9, 2026, in an attempt to retroactively cure the procedural defect, counsel filed an Entry of Appearance for all defendants, including Create a Legacy Not a Moment. *See* Exhibit E.  On July 17, 2026, Plaintiff's Motion for Alternative Service was denied on the basis that the case was removed to federal court.  *See* Exhibit F.   Petitioning counsel filed a Notice of Removal on behalf of only one of five defendants when they did not even represent Create a Legacy in the state court action.

Defendant USA Fencing filed a timely Notice of Removal of this Action on July 2, 2026 pursuant to 28 U.S.C. § 1441(a). This motion to remand is timely filed under § 1447(c).

**III.    <u>Standard</u>**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). As such, federal courts are authorized to hear cases only as provided by the Constitution and by statute. *Gunn*, 568 U.S. at 256. Removal statutes are strictly construed, and the Court must resolve any doubts about federal jurisdiction in favor of remand. *Steel Valley Auth. v. Union Switch & Signal Div*., 809 F.2d 1006, 1010 (3d Cir. 1987). The party seeking to remove a case to federal court has the burden of establishing subject matter jurisdiction. *Samuel-Bassett v. KIA Motors Am., Inc*., 357 F.3d 392, 396 (3d Cir. 2004); *Boyer v. Snap-on Tools Corp*., 913 F.2d 108, 111 (3d Cir. 1990)  The federal removal statute "is to be strictly construed against removal, so that the congressional intent to restrict federal jurisdiction is honored."  *Genelink Biosciences, Inc. v. Colby*, 722 F.Supp. 2d 592, 595 (D. N.J. 2010).  28 U.S.C. § 1446(b)(2)(A) requires

that "all defendants who have been properly joined and served must join in or consent to the removal."

"Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States.' " *Gunn*, 568 U.S. at 257 (quoting 28 U.S.C. § 1331). *Gunn* explained that a case can "arise under" federal law in two ways. First, and most commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Id.*; *see also Hunter v. Greenwood Trust Co.*, 856 F.Supp. 207, 211 (D.N.J. 1992)("…a case 'arises under' federal law only when a federal question appears on the face of plaintiff's 'well-pleaded complaint.'").

Second, federal courts may still have federal question jurisdiction "even where a claim finds its origins in state rather than federal law." *Id.* at 258. Federal courts will have jurisdiction over such a state claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Grable*, 545 U.S. at 314, 125 S.Ct. 2363; *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 772 F.3d. 158, 163 (3d. Cir. 2014). Federal question jurisdiction via the second path requires that *each* of those four elements are met, and the Supreme Court described such cases as being of a "special," "small," and "slim category." *Id.*

A third, vanishingly rare path, is "complete preemption" of state law by federal law. "Complete" preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is, in reality, 'purely a creature of federal

10

law.'" *Mersmann v. Cont'l Airlines*, 335 F.Supp.2d 544, 548 (D.N.J. 2004). It is a limited exception to the "well-pleaded complaint" rule that requires a determination that "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, (1987)..

IV.    <u>**Argument**</u>

    **A. Remand Is Required For The Independent Procedural Defect: The Removal Was Not Unanimous.**

28 U.S.C. § 1446(b)(2)(A) requires that "all defendants who have been properly joined and served must join in or consent to the removal." Failure to comply is a procedural defect requiring remand when raised within 30 days. *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995); *Lewis v. Rego Co.*, 757 F.2d 66, 68–69 (3d Cir. 1985).

Nothing on the face of the Notice of Removal establishes that Create a Legacy, Jessica Saxon, Miles Chamley-Watson or Shannon Daugherty  consent to the notice of removal.  Non-Signing defendants have an obligation to communicate to the court their consent to the removal.  *Michaels v. State of N.J.*, 955 F.Supp.315, 321 (D.N.J. 1996)("While they may have communicated their consent to the signing defendants, they did not communicate their consent in any writing directed to the court.")  This Court provided clear rules in *Michaels v. State of N.J:*

> While requiring all defendants in a multiple defendant case to sign the removal petition itself would be a senseless formalism, timely written evidence of joinder or consent from each defendant such as by filing its own notice of removal, an affidavit of joinder or consent, or even a letter provides the court with a written entry that would unequivocally bind the allegedly consenting defendants.  On the other hand, '[t]o allow one party, through counsel, to bind or represent the position of other parties without their *express* consent to be so bound would have serious adverse

11

repercussions, not only in removal situations, but in any incident of litigation.'

955 F.Supp. 315, 321 (D.N.J. 1996)(emphasis added).  Each defendant had to provide such consent, and none is evidenced in the Notice of Removal or the docket other than USA Fencing.

Next, Defendant Create a Legacy Not a Moment also was required to consent to this removal.  *See Cacoilo v. Sherwin-Williams Co.*, 902 F.Supp.2d 511, 523 (D.N.J. 2012)("[e]ven where…no counsel has made an appearance on behalf of a named defendant and no proof of service has been filed with respect to that named defendant, the removing defendant nevertheless has the duty to insure that such named defendant has consented to the removal.")(internal quotations omitted)(citing to *Aqua-Gulf Transp.*, 2006 WL 3591291, at *3 (D.N.J. Dec. 11, 2006).

Here, Defendant Create a Legacy Not a Moment is owned by Defendant Miles Chamley-Watson, who is represented in the action.  Counsel of record communicated via e-mail that they would accept service for Defendant Create a Legacy Not a Moment.  As removal deprives a plaintiff of her chosen forum and burdens the federal court system,  this Court explained in *Cacoilo* that courts hold petitioning counsel to an exacting standard of procedural compliance: "virtually all, if not all, Defendants [in the case at bar] are represented by 'sophisticated counsel who are no doubt familiar with the rules and procedures surrounding removal…any 'inadvertence or neglect rests with the defendants; as the party bearing the burden to establish that removal is proper." *Cacoilo*, 902 F.Supp.2d at 522.

Here, on the face of the Notice of Removal, the *required* unanimity is absent. Further, petitioning counsel could not have joined Create a Legacy Not a Moment to the

12

July 2, 2026 removal when counsel did not represent that defendant in the state court action when the Notice of Removal was filed on behalf of USA Fencing. On July 2, movant USA Fencing needed to provide unambiguous notice to the Court that Miles Chamley-Watson, Jessica Saxon, Shannon Dougherty, and Create a Legacy consented to the removal. It did not do so, and could not have done so when petitioning counsel did not represent Create a Legacy in the state court action when the Notice was filed.

### B.  No Federal Question Appears on the Face of the Well-Pleaded Complaint.

The first path to "arising under" jurisdiction does not apply because federal law did not create Dinah's cause of action. Dinah's claims are based on state public accommodation statute. No determination of a federal law is an essential element to Dinah's claims under the NJLAD. The NJLAD claim asks three questions: (1) was this a place of public accommodation, (2) is plaintiff a member of a protected class, and (3) was she denied equal treatment on that basis. *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 477 (D.N.J. 2023). None of those questions requires construing a word of federal law. Federal law does not create the right of action here and Dinah's LAD claim does not necessarily raise any issues of federal law. A court need not address federal law at all in determining whether Defendants' exclusion from a public accommodation violates the New Jersey LAD.

Under the "well-pleaded complaint rule," a case ordinarily is not removable on federal question grounds unless the federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar,* 482 U.S. at 392. Defendants' theory is that federal law required them to exclude Dinah. (Notice of Removal) That is a defense. A federal defense never supports removal. *Caterpillar*, 482 U.S. at 392–93 ("[A] case may

13

not be removed to federal court on the basis of a federal defense, including the defense of federal preemption.")

### C. This Case Is Not Among the "Special and Small Category" of State Law Cases That Turn On a Necessary and Substantial Federal Issue.

Since federal law did not create the basis for Dinah's claim, Defendants must establish that this case fits within the "special and small category" of cases as outlined in *Grable* and *Gunn* that turn on a necessary and substantial Federal issue. The federal issue must be (1) "necessarily raised, (2) actually disputed, (3) substantial and (4) capable of resolution in federal court without disrupting the federal-state balance approved by congress." *Id.* This is not a balancing test. Every element is required.

#### 1.    The Complaint Does Not "Necessarily Raise" any Federal Questions.

In order for a federal question to be "necessarily raised," its vindication under state law must turn on some construction of federal law. *Johnson v. Mazie*, 144 F.4th 146, 152 (3d. Cir. 2025); *Manning*, 772 F.3d. at 164 ("For a federal issue to be necessarily raised, 'vindication of a right under state law [must] necessarily turn on some construction of federal law.") A federal issue is not "necessarily raised" where the state claim can be resolved on non-federal grounds.

Here, Dinah could win or lose the NJLAD claim without the Court ever deciding what the federal Ted Stevens Amateur Sports Act ("Sports Act") requires. Her claims are based in state public accommodations laws and do not turn on any federal law. Indeed, no federal law protects against sex discrimination in places of public accommodation. *See* 42 U.S.C. § 2000a (providing no discrimination in any place of public accommodation based on race, color, religion, or national origin, with no mention of gender and/or sex. There is

14

no determination of a federal law that can be made in order to bring a cause of action under the NJLAD.

### 2.       No Federal Issues Are "Actually Disputed" in Plaintiff's Complaint.

The "actually disputed" element turns on whether a federal issue must be decided to resolve a plaintiff's state law claim. For example, in *Grable* the plaintiff "premised its superior title claim [in a state quiet title action] on the IRS's failure to give adequate notice, as defined by federal law. Whether Grable received notice is an essential element of its quiet title claim, and the federal statute's meaning is actually disputed." *Grable*, 545 U.S. 308, 314-15.

No federal law is likewise "actually disputed" by Dinah's Complaint.  She has not brought a civil rights claim under federal constitutional law artfully pleaded as a state law claim, and proof of her claims does not rely on the resolution of any issue of federal law. The only issues that Dinah raises under the LAD are factual not legal: was there a place of public accommodation, is plaintiff a member of a protected class, and was she denied access on that basis. *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 257 (3d Cir. 2016)(finding no actual dispute of federal law where "the fundamental dispute is not legal at all, but is factual…")

Even if there was a federal law that governed sex discrimination in places of public accommodation (which there is not), Plaintiff would have every right to bring her cause of action under state not federal law so long as she did not ground her claims on breach of federal law.  *Genelink*, 722 F.Supp.2d at 595 (Plaintiff is the "master of the claim; …she may avoid federal jurisdiction by exclusive reliance on state law.")

### 3.       No Federal Questions Are "Substantial."

15

The "substantiality" inquiry under *Grable* is exacting because it looks to the importance of a federal issue to "the federal system as a whole", not to litigants. *Gunn*, 568 U.S. at 260. It "goes to the strength of the federal system's interest in overseeing the resolution of the purported federal issue." *Williams v. ProMedica Health Sys. Inc.*, 24-1369, 2024 WL 4927258, at *3 (3d Cir. Dec. 2, 2024). For example, in *Grable,* a substantial federal issue presented in a state law quiet title claim that disputed the IRS's sale of property seized for tax delinquency because the "meaning of a federal tax provision is an important federal-law issue that belongs in federal court." 545 U.S. at 315.

No "substantial" federal issues are posed by Plaintiff's LAD claims against organizations like USA Fencing because Congress did not provide it a removal right when it did provide such right to one sports entity in the statute governing amateur sports, and Congress likewise did not provide any private right of action under the statute that Defendants rely upon.

Congress specifically addressed removal jurisdiction in the Ted Stevens Amateur Sports Act:

> The corporation may –
>
> ….
>
> 9. sue and be sued, except that any civil action brought in a State court against the corporation and solely relating to the corporation's responsibilities under this chapter shall be removed, at the request of the corporation, to the district court of the United States in the district in which the action was brought, and such district court shall have original jurisdiction over the action without regard to the amount in controversy or citizenship of the parties involved, and except that neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter;

36 U.S.C. §220505(b)(9).

16

The USOPC is "the corporation." USA Fencing is a "national governing body" ("NGB")  recognized by the USOPC to manage a specific amateur sport. 36 U.S.C. § 220521. "National governing body" is a defined term. 36 U.S.C. § 220501(b)(8) (" 'national governing body' means an amateur sports organization that is recognized by the corporation"). That term is not included in the removal provision of section 220505(b)(9). Jurisdiction under that statute is limited to actions brought against and removed by the "corporation" which is not a party to this action. Courts "refrain from reading [those defined terms] into the statute when Congress has left [them] out." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and alterations omitted)). Accordingly, "section 220505(b)(9) is not a source of federal subject matter jurisdiction" for an NGB. *Gonzalez v. United States Ctr. for SafeSport*, 374 F.Supp.3d 1284, 1290 (S.D. Fla. 2019).

If Congress concluded that allowing NGBs to remove state court actions involved a substantial federal interest, it would have provided for them to remove when it did so for the USOPC. Simply *being* a recognized NGB is irrelevant. *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 258 (3d Cir. 2016)("That the allegedly misbehaving arbitration panel happened to be affiliated with a [FINRA] self-regulatory organization does not meaningfully distinguish this case from any other suit alleging arbitrator partiality in a securities dispute.") Congress created exactly one federal-forum provision in the Act, and its conditions are not met by any defendants here. No "substantial" federal interest in

17

removal of state claims against sports organizations may be found where Congress did not extend the removal right to NGAs.

Additionally, the Sports Act specifically states that "neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter". 36 U.S.C. §220505(b)(9). Section 220527 of the Act is entitled "Complaints Against National Governing Bodies."  This section merely says that an individual "may" file an internal complaint with the USOPC.   There are no civil enforcement provisions related to NGBs.

The absence of a federal private right of action is significant evidence that Congress did not intend federal courts to entertain these disputes. *Merrell Dow Pharms. v. Thompson,* 478 U.S. 804, 814 (1986)("[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is *insufficiently* 'substantial' to confer federal-question jurisdiction.")(emphasis added).

The Sports Act itself memorializes Congress's intent for NGB's to abide by state law and be sued in state court.  *See,* 36 U.S.C.A. §220524(b)("Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law.").  By section 220524(b) Congress safeguarded against this precise situation: an NGB claiming that it may evade state court jurisdiction over a dispute brought under state law. NGB's cannot hide behind their federal charter to break state law.

### 4. Antidiscrimination Law Is a Core State Police Power That Would Be Disrupted By Preempting State Court Jurisdiction.

18

The New Jersey Law Against Discrimination law is within the police power of the state. N.J.S.A. 10:5-2("The enactment [of NJLAD] shall be deemed an exercise of the police power of the State for the protection of the public safety, health and morals and to promote the general welfare and fulfillment of the provisions of the Constitution of this State guaranteeing civil rights."). The Supreme Court starts analysis "with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

The Court may note that Defendants intentionally waived their opportunity to remove based on diversity jurisdiction. Their purpose is not merely to gain a federal forum. Rather, it is to subordinate New Jersey public accommodation statutory law to what they imagine are federal immunities. They do so even though nothing prevents them from asserting alleged federal defenses in state court. In short, their objective in removing is to disrupt the federal/state balance.

**D. Plaintiff's Claims are not Completely Preempted by a Federal Law.**

The third avenue to federal issue jurisdiction arises when the action "falls within the narrow class of cases to which the doctrine of 'complete pre-emption' applies." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004). "[C]omplete pre-emption recognizes 'that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' " *Id*..

"Federal law completely preempts state law only when there is (1) a federal statute that (2) authorizes federal claims vindicating the same interest as the state claim. Only statutes that check both boxes can transform state-law claims into federal ones. And the

19

Supreme Court has identified only three (ERISA, the National Bank Act, and the Labor-Management Relations Act). *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707 (3d Cir. 2022)(internal citations and quotations omitted).

When evaluating complete preemption claims, courts employ a two part "Complete Preemption Test". *Dawson ex rel. Thompson v. Ciba-Geigy Corp., USA*, 145 F.Supp.2d 565, 568 (D.N.J. 2001). The first step is to assess whether the purported preemptive statute contains a civil enforcement provision that is "within the scope of which the plaintiff's state claim falls." *Id.* Complete preemption requires a federal cause of action that displaces the state claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)("where this Court has found complete pre-emption—certain causes of action under the LMRA and ERISA—the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.")

As noted above, the Sports Act says that it creates no private right of action.. The first prong of the *Dawson* test fails on the statutory text. *See also Michels v. USOC*, 741 F.2d 155, 157–58 (7th Cir. 1984)("…Congress intended not to create a private cause of action under the Act.")

The second prong is whether there are "clear indications of a congressional intention to permit removal despite Plaintiff's exclusive reliance on state law." *Dawson* , 145 F.Supp.2d at 568**.** Nothing in the statute suggests that Congress intended that a statute that provides no private cause of action should preempt private causes of action under state public accommodation law. The Sports Act is a federal charter that creates the United States Olympic and Paralympic Committee ("USOPC"). 36 U.S.C. §220505. It is found in Section B, of Title 36 of the United States Code. See 36 U.S.C. §220501 et seq. Part B

20

of Title 36, identifies all organizations that are federally chartered as a Patriotic and National Organization. *Id.*  A statute that charters Little League Baseball, or the Navy Wives Club of America, was not intended to completely preempt all legal claims involving the chartered organizations.

In *Bennett v. USA Water Polo, Inc.*, 2009 WL 1089480 (S.D. Fla. Apr. 21, 2009) USA Water Polo, an NGB, removed various state law tort claims it argued were "completely" preempted by the Sports Act. *Id.* at *2. The Court looked to the text of the Sports Act to determine whether the plaintiff could have originally sued in federal court under that statute. It concluded:

> [T]he Defendants only invoke one statute (i.e., the Amateur Sports Act) as the only source of federal law that supports removal based upon federal-question jurisdiction, and this statute provides an internal mechanism-which includes a possible appeal through arbitration-within the United States Olympic Committee ("USOC") and its national governing bodies (e.g., USA Water Polo, Inc.) as the exclusive method to resolve disputes arising under the Amateur Sports Act. Simply put, the district courts are not a forum that may provide relief for such disputes. Thus, the instant action is not a case over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

Id. *2. (internal citations omitted).  The absence of a federal remedy deprived the plaintiff of original federal jurisdiction over the claim, even if pled under federal law.

In our case, the Sports Act could not provide a federal remedy for Dinah because it creates no avenue through which a federal court can adjudicate anything, let alone an alleged violation of a state public accommodation statute. There is no "federal remedy" or cause of action under the Sports Act through which Dinah could pursue her claim.

Defendants cite to *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580 (7th Cir. 2001), which provides helpful insight when the court said, "[t]here is no disagreement that state-law causes of action can be brought against the [USOPC]."  244 F.3d. at 595 (7th

Cir. 2001). With that being said, it unclear why Defendants cite to this case as it does not address the issue of removal, nor the "arising under" jurisdiction. *Id.* The case also does not involve an NGB. *Id.* This case addressed the narrow issue whether an individual could challenge a USOPC eligibility determination for international competition in court. *Id.* *Slaney* involved a middle-distance runner who is challenging the USOPC's processes for drug-testing for the purposes of eligibility in international competition. *Id.* The court confirmed that the USOPC has exclusive jurisdiction over eligibility determinations relating to participation in international competition. *Id.* at 595, *see* 36 USCA §220503(3). The Court went on, however, to explain that there are exceptions to this exclusive jurisdiction, citing to cases where an NGB breaches its own rules. *Id.* *Slaney* does not address the issue at hand which is an NGB's denial of access to a public tournament under state civil rights laws. *Id.*

Defendants further cite to *Behagen v. Amateur Basketball Association*, which provides even more support for the position that this matter must be brought in state court. 884 F.2d. 524, 529 (10th Cir. 1989)("…[the NGB] is at least a nominal private party. It is further removed from congressional action under the [Sports Act].) This case involves a plaintiff who brought an antitrust claim against a national governing body and its executive director, claiming that they had monolithic control over the sport of basketball. *Id.* at 528. The Court found that the Sports Act created one NGB for each Olympic sport, and that NGB would comply with the duties laid out in the Act . *Id.* at 529. The court found that there was no antitrust cause of action because "..the [NGB] could not be authorized under the Act unless it maintained exactly that degree of control

22

over it sport that [Plaintiff]…alleges as an antirust violation." *Id.* This case has nothing to do with removal from state court, nor state discrimination claims.

## V.        Conclusion

For the foregoing reasons, Plaintiff, Dinah Yukich, requests that this Court remand this action to the Superior Court of New Jersey: Civil Division, Atlantic County, and award Dinah Yukich fees and expenses in connection with the preparation and argument of the instant motion.

Respectfully submitted,

SPECTOR GADON ROSEN VINCI, P.C.


/s/ Susan M. Cirilli
Susan M. Cirilli, Esq.
Gabriel V. Tese, Esq.
One Logan Square
130 N. 18th Street, 18th Floor
Philadelphia, PA 19103
Telephone:  (215) 241-8887/(215) 241-8873
Email:  scirilli@sgrvlaw.com,
GTese@sgrvlaw.com
*Attorneys for Plaintiff, Dinah Yukich*