**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DINAH YUKICH,<br><br>Plaintiff,<br><br>v.<br><br>MILES CHAMLEY-WATSON, USA FENCING, JESSICA SAXON, CREATE A LEGACY NOT A MOMENT, INC., and SHANNON DAUGHERTY,<br><br>Defendants. | Civil Action No. 2:26-cv-8140-KSH-AME<br><br>Motion Day: September 8, 2026 |

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**


Claudia A. Costa, Esq.
Aimée S. Lin, Esq.
**GOLDBERG SEGALLA LLP**
711 Third Avenue, Suite 1900
New York, New York 10017
646-292-8700
ccosta@goldbergsegalla.com
alin@goldbergsegalla.com
*Attorneys for Defendants Miles Chamley-Watson, United States Fencing Association (incorrectly pleaded as USA Fencing), Jessica Saxon, Create a Legacy Not a Moment, Inc., and Shannon Daugherty*

*On the brief:*
*Claudia A. Costa*
*Aimée S. Lin*

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... **1**

**II. PROCEDURAL HISTORY** .......... **2**

**III. FACTUAL BACKGROUND** .......... **3**

**IV. LEGAL ARGUMENT** .......... **4**

**A. Plaintiff Mistakenly Argues that Defendants' Removal Was Not Unanimous.** .......... **4**

**B. Under the Four-Part *Grable* Test, Federal Jurisdiction Exists over Plaintiff's LAD and New Jersey Common Law Claims.** .......... **5**

1. Background of the Ted Stevens Act. .......... 6

2. The *Grable* Test. .......... 8

**C. Plaintiff's Claims are Completely Preempted by Federal Law; Therefore There is a Federal Question at Issue Here.** .......... **12**

1. Congress Established a Comprehensive, Uniform Federal Regime for Amateur Sport Eligibility and Dispute Resolution that Preempts Conflicting State Law Causes of Action. .......... 12

2. Courts Applying the Act Repeatedly Hold that State Law Claims Attacking Eligibility/Participation Decisions are Preempted (or Must Be Resolved in the Ted Stevens Act's Arbitral Forum). .......... 13

3. Allowing the LAD to Govern Athlete Categorization and Eligibility Would Pose a Direct Obstacle to the Ted Stevens Act's Purposes .......... 15

**V. CONCLUSION** .......... **16**

# TABLE OF AUTHORITIES

**Cases**

*Cacoilo v. Sherwin-Williams Co.*,
902 F. Supp. 2d 511 (D.N.J. 2012) ....................................4, 5

*Dames v. United States Ctr. for SafeSport*,
No. 25-3503, 2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026) .................... 14, 15-16

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
545 U.S. 308, (2005) ....................................6, 8, 10, 12

*Gunn v. Minton*,
568 US. 251 (2013) ....................................6, 10

*Hale v. McGregor*,
2025 U.S. Dist. LEXIS 151470 (W.D. Tex. June 26, 2025)
*adopted by* 2025 U.S. Dist. LEXIS 150018 (W.D. Tex. Aug. 4, 2025) ....................11

*Hughes v. Talen Energy Mktg., LLC*,
578 U.S. 150 (2016) ....................................13

*Lewis v. Rego Co.*,
757 F.2d 66 (3d Cir. 1985) ....................................5

*Link v. Wabash RR*,
370 U.S. 626 (1962) ....................................5

*Michaels v. New Jersey*,
955 F. Supp. 315 (D.N.J. 1996) ....................................5

*Micheletti v. McGregor*,
2025 U.S. Dist. LEXIS 133890 (W.D. Tex. June 26, 2025),
*adopted by* 2025 U.S. Dist. LEXIS 150014 (W.D. Tex. Aug. 4, 2025) .................... 10-11

*Murphy v. NCAA*,
584 U.S. 453 (2018)....................................12, 13

*Slaney v. Int'l Amateur Athletic Fed'n*,
244 F.3d 580 (7th Cir. 2001) .................... 7, 12, 13-14

**Statutes**

28 U.S.C. § 1441 ....................................2

28 U.S.C. § 1446....................................4

36 U.S.C. §§ 220501, *et seq*....................................1

36 U.S.C. §§ 220501-220505 ....................12

36 U.S.C. § 220503....................6, 7

36 U.S.C. § 220509....................7, 11

36 U.S.C. §§ 220521-220525 ....................12

36 U.S.C. §§ 220522-220524 ....................6

36 U.S.C. § 220522(A) ....................12

36 U.S.C. § 220522(4)(B)....................12, 15

36 U.S.C. § 220523....................7, 9, 11

36 U.S.C. § 220524....................7, 9, 11

36 U.S.C. § 220529....................7, 11

LAD ....................1, 5, 9, 10, 13, 14, 15

N.J.S.A. 10:5-1, *et seq.* .................... 1

**Constitutions**

U.S. Const. art. VI, cl. 2 .................... 12

**Other**

Congressional Research Service, May 18, 2023,
*Federal Preemption: A Legal Primer* (CRS Report No. R45825)
https://www.congress.gov/crs-product/R45825....................15

## I. INTRODUCTION

Defendants United States Fencing Association d/b/a USA Fencing ("USAF"), Shannon Daugherty ("Daugherty"), Miles Chamley-Watson ("Chamley-Watson"), Create a Legacy Not a Moment, Inc. ("Legacy"), and Jess Saxon ("Saxon"), offer this brief in opposition to the Motion to Remand by plaintiff Dinah Yukich ("Plaintiff").

Plaintiff seeks remand by casting this case as a routine public accommodation dispute arising under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. (the "LAD") and the New Jersey common law. It is not. At its core, this action is a direct challenge to USAF's federally delegated eligibility determination concerning participation in a competitive division of a sport governed by the Ted Stevens Olympic and Amateur Sport Act, 36 U.S.C. §§ 220501, *et seq*. (the "Ted Stevens Act"). The Ted Stevens Act, established a comprehensive federal system of amateur sports governance, delegated exclusive authority over athlete eligibility to certified National Governing Bodies ("NGBs") and established mandatory federal procedures for resolving disputes concerning those determinations. Plaintiff's claims cannot be adjudicated without interpreting federal law because she seeks relief which would require this Court to invalidate USAF's federally mandated eligibility requirements; declare Plaintiff eligible to compete in a gender designated division and compel USAF and Legacy to disregard the federal governance structure Congress enacted.

Plaintiff's LAD claims are not public accommodation claims. Plaintiff's claims is a challenge to eligibility disguised as discrimination.

As set forth below, removal was procedurally proper because Legacy was not properly joined and served and unanimity was not required. Plaintiff's claims necessarily raise substantial

federal questions and Plaintiff's claims are preempted by a comprehensive federal regime governing athlete eligibility and dispute resolution.

## II. PROCEDURAL HISTORY

Plaintiff filed her Complaint in the Superior Court of New Jersey, Law Division, Atlantic County, on May 19, 2026.

On July 2, 2026 defendant USAF filed a Notice of Removal to this court pursuant to 28 U.S.C. § 1441(a) (a section of the Ted Stevens Act). (ECF No. 1).

On July 8, 2026, all defendants applied for a "Clerk's Extension" to extend the time to Answer, Move or otherwise respond to the Complaint to July 23, 2026. That application was granted. On July 23, 2026, Defendants filed their Motion to Dismiss. (ECF Nos. 4 through 4-14).

On July 31, 2026, Plaintiff filed a Motion to Remand this matter back to the New Jersey Superior Court. (ECF Nos. 8 through 8-11).

On August 12, 2026, Plaintiff filed a Motion to Stay Defendants' Motion to Dismiss pending this Court's decision on Plaintiff's Motion to Remand.

On August 13, 2026, the Court issued an order that, among other things, ordered Defendants to respond to Plaintiff's Motion to Stay; Defendants did so. (ECF Nos. 12, 13).

On August 18, 2026, the Court issued an Order confirming the deadline for Defendants to submit this opposition as August 25, 2026. This brief is respectfully submitted pursuant to that Order.

## III. FACTUAL BACKGROUND[1]

Plaintiff is a transgender woman and a USAF member. USAF is the USOPC certified NGB for fencing. As an NGB, USAF is responsible for establishing eligibility rules, administering competition, and enforcing compliance with the Ted Stevens Act.

In July of 2023, Plaintiff re-activated her membership with USAF. *Id*. at ¶ 6. At Plaintiff's request, USAF changed Plaintiff's gender marker from "M" (for male) to "F" (for female). *Id*. at ¶ 8. Plaintiff was also marked as eligible to compete against women in fencing events. *Id*.

After letting her USAF membership lapse briefly, on April 9, 2025, Ms. Yukich reactivated her USAF Membership in 2025. *Id*. at ¶ 52. When becoming a member of USAF, Plaintiff signed a waiver which contained an arbitration clause. Pursuant to the arbitration clause, Plaintiff agreed that all claims arising out of or relating to her "membership or participation … in USA Fencing, including but not limited to any matter arising from or relating to … competition in any fencing event, whether staged under the auspices of USA Fencing … or some fencing administrative body … compliance with or violations of any rules, regulations, policy, practice, bylaw, statute or common law, of USA Fencing … including any issue concerning compliance by USA Fencing or by … any club member, individual member … shall be settled by arbitration." The Waiver is attached to the Costa Cert. as Exhibit B. *See* Costa Cert. at Exhibit B at 2. Furthermore, Plaintiff agreed that any such arbitration must take place in Colorado Springs, Colorado, and apply Colorado law. *Id*.

Plaintiff alleges that on July 22, 2025, USAF notified its members that USAF was being forced by the United States Olympic and Paralympic Committee to implement the "Trans Ban"

[1] For purposes of this motion only, Defendants accept the allegations in Plaintiff's Complaint as true. Plaintiff's Complaint is attached to the Certification of Claudia A. Costa ("Costa Cert."), submitted herewith, as Exhibit A.

that excludes transgender women from competing in women's events; however, transgender women are permitted to compete against men. *See* Costa Cert. at Exhibit A at ¶ 53.

Plaintiff claims that on or about August 1, 2025, USAF unilaterally changed Plaintiff's sex marker from "F" (for female) to "M" (for male), denying Plaintiff the ability to register for women's competitions. *Id*. at §§ 10, 58. In other words, if Plaintiff were to compete, she would have to compete against men.

In November 2025, Plaintiff attempted to register for the Miles Chamley-Watson Cup (the "Tournament"), a fencing tournament, scheduled for March 20-22, 2026, in Atlantic City, New Jersey, "but was blocked from registration and participation in any events scheduled for women." *Id*. at ¶ 11. Plaintiff claims Legacy "presented" the Tournament.

Plaintiff seeks declaratory and injunctive relief requiring USAF and Legacy to permit her to compete in the women's division. Such relief would require invalidating USAF's federally mandated eligibility requirements.

## IV. LEGAL ARGUMENT

### A. Plaintiff Mistakenly Argues that Defendants' Removal Was Not Unanimous.

Plaintiff argues that removal was defective because Legacy did not consent. But, 28 U.S.C. Section 1446(b)(2)(A) requires consent only from Defendants properly joined and served.

This "requirement that all defendants must join in or consent to removal is more commonly referred to as the rule of unanimity." *Cacoilo v. Sherwin-Williams Co.*, 902 F. Supp. 2d 511, 516 (D.N.J. 2012).

Here, Defendants' Notice of Removal, certified by counsel, states: "***All properly served defendants consent to removal though consent is not necessary***. ***All defendants are also represented by the same counsel***." (ECF No. 1 (emphasis added)). Under these circumstances, the

purpose of the unanimity rule is fully satisfied, as Defendants "voice[d] their consent *directly* to the court." *Michaels v. New Jersey*, 955 F. Supp. 315, 320 (D.N.J. 1996) (citations omitted) (emphasis in original).

Plaintiff's argument that counsel could not represent Legacy because no appearance was filed tries to elevate a docketing issue over substance. Counsel certified that she represented all defendants and that they consented. *Link v. Wabash RR*, 370 U.S. 626, 634 (1962)

None of the cases cited by Plaintiff support the notion that a Notice of Removal does not satisfy the rule of unanimity where counsel certifies to the court that she represents all the defendants and that all defendants consent to removal. Rather, the cases cited by Plaintiff are somehow inapposite. *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985) (noting that defendant Bastian was represented by counsel different from the other defendants, but permitting Bastian to file evidence of consent with the court); *Michaels*, 955 F. Supp. at 318-19 (setting forth circumstances that a ***defendant*** that had not consented to removal made the motion to remand); *Cacoilo*, 902 F. Supp. 2d 511.

But, more importantly, Legacy had not yet been joined or served. At the time of removal, Plaintiff had made an application for alternative service upon Legacy. Since Legacy was NOT properly joined or served at the time, its consent was not required. *Lewis*, 757 F.2d at 68.

Plaintiff's argument of lack of unanimity thus fails.

### B. Under the Four-Part *Grable* Test, Federal Jurisdiction Exists over Plaintiff's LAD and New Jersey Common Law Claims.

As set forth herein, Plaintiff's LAD claim raises substantial federal questions because the requested relief cannot be granted without interpreting the Ted Stevens Act and USAF's federally delegated authority over eligibility.

Under *Grable* and *Gunn v. Minton*, 568 US. 251 (2013), federal jurisdiction exists where a state-law claim:

a. necessarily raises a federal issue,

b. actually disputed,

c. substantial, and

d. resolvable in federal court without disrupting the federal-state balance.

All four elements are met.

1. Background of the Ted Stevens Act.

Congress enacted the Amateur Sports Act of 1978, now known as the Ted Stevens Olympic and Amateur Sports Act, to establish a comprehensive national framework for the governance of amateur athletic competition in the United States. The Ted Stevens Act grants federal recognition to the United States Olympic and Paralympic Committee ("USOPC") and authorizes the USOPC to certify a single NGB for each Olympic sport. 36 U.S.C. §§ 220503, 220521. The Ted Stevens Act was intended to promote uniformity in the administration of amateur athletics, protect athletes' rights, and ensure United States Participation in international athletic competition.

The Ted Stevens Act delegates substantial authority to the USOPC and certified NGBs. An NGB is responsible for governing its sport nationwide, establishing eligibility standards, resolving disputes, selecting athletes for international competition, and representing the United States before the applicable international sports federation. 36 U.S.C. §§ 220522-220524. The statute defines an NGB as an organization certified by the USOPC to govern a particular sport, and grants that organization exclusive authority over matters within its sport's jurisdiction.

Recognizing that eligibility and competition disputes require specialized and uniform resolution, Congress included mandatory dispute resolution procedures within the Ted Stevens Act. The USOPC must provide for the "swift and equitable resolution of disputes" involving

athletes and NGBs, and the Ted Stevens Act expressly authorizes arbitration of determinations made under the statute. 36 U.S.C. §§ 220509, 220529. Courts have repeatedly recognized that Congress intended questions concerning athlete eligibility and participation in amateur sport to be addressed primarily through the Ted Stevens Act's administrative and arbitral framework rather than through disparate state law proceedings. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 595-600 (7th Cir. 2001).

Defendant USAF is the USOPC-certified NGB for the sport of fencing. As an NGB, USAF is charged with establishing and enforcing eligibility rules, administering competition, and ensuring compliance with the requirements of the Ted Stevens Act and the policies governing amateur sport. Accordingly, disputes challenging eligibility determinations made pursuant to those responsibilities arise from, and are governed by, the federal framework established by the Ted Stevens Act. 36 U.S.C. §§ 220522-220524, 220509, 220529.

Athlete eligibility is one of the core subjects entrusted by Congress to the governance structure created by the Ted Stevens Act. Rather than leaving eligibility standards to individual states, local organizations, or courts applying varying state laws, the Ted Stevens Act vests authority in the USOPC and the NGBs that it certifies for each Olympic sport. 36 U.S.C. §§ 220503, 220523.

Moreover, the Ted Stevens Act requires each NGB to establish procedures governing competition and athlete selection. 36 U.S.C. §§ 220523, 220524. In carrying out these duties, NGBs necessarily determine which athletes are eligible to compete in particular divisions, categories, teams, and sanctioned events. Those determinations are part of the federally-authorized governance responsibilities that Congress assigned to the NGBs.

Here, Plaintiff tries to circumvent the Ted Stevens Act's dispute resolution scheme with respect to her eligibility to compete by couching her claims as arising under the New Jersey Law Against Discrimination and New Jersey common law. This should not be permitted.

2. The *Grable* Test.

In *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), the Supreme Court acknowledged the "longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312 (citation omitted). The Court continues, explaining that "[t]he doctrine captures the common sense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues…" *Id.* (citation omitted). In determining whether there is federal jurisdiction even in a situation where a federal claim does not appear on the face of the subject complaint, the Court set forth the following test: "the question is, does a state-law claim [1] necessarily raise a stated federal issue, [2] actually disputed and [3] substantial, [4] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

First, as to whether a federal issue is necessarily raised, the key question is whether Plaintiff can prevail on her state claims without a court having to consider issues governed by the Ted Stevens Act. Plaintiff here seeks, among other things, a declaration that Defendants' alleged exclusion of her from the women's division was discriminatory. To grant that relief, the Court must determine:

- **whether USAF possesses federally delegated authority to establish eligibility rules;**
- **what those rules are and whether they were mandated by the USOPC;**
- **whether USAF properly applied federally mandated eligibility rules;**
- **whether federal eligibility rules supersede state public-accommodation law.**

These questions arise directly from the authority Congress delegated to NGBs under the Ted Stevens Act. 36 U.S.C. §§ 220523-220524. Eligibility standards exist solely because Congress delegated authority to NGBs. Consequently, a court cannot adjudicate Plaintiff's LAD claim without interpreting federal law.

Plaintiff's claims here are not merely that she was denied access to a public accommodation, or was subject to intentional infliction of emotional distress, or civil conspiracy. Rather, Plaintiff challenges USAF's eligibility determination regarding participation in the Tournament. Because eligibility standards exist solely by virtue of USAF's federally delegated authority as the NGB for fencing, adjudication of the LAD claim necessarily requires interpretation and application of federal law.

Second, the federal issue of eligibility is actually disputed. The parties genuinely dispute the scope of USAF's authority under the Ted Stevens Act, *i.e.*, they disagree whether USAF's disallowance of Plaintiff to compete against female fencers (but allowance of Plaintiff to compete against men) is lawful. Plaintiff alleges, among other things, that the LAD requires access to the Tournament such that Plaintiff be permitted to compete against women, regardless of the eligibility rules. However, it is USAF's position that Congress authorized it, as an NGB, to establish and enforce eligibility criteria as part of governing fencing. Thus, the meaning and effect of the Ted Stevens Act, a federal law, is directly contested.

Third, the federal issue is substantial. A federal issue is "substantial" when it is important to "the federal system as a whole," rather than merely significant to the parties involved. *Gunn* 568 US. at 260. The substantial inquiry focuses on the federal government's interest in obtaining the uniform interpretation and application of federal law. *Id*; and *Grable*, 545 U.S. at 315. Uniformity is especially important in eligibility determinations. If fifty state courts apply differing state public accommodation laws can independently redefine who is eligible to compete in nationally governed competitions, the federal framework created by Congress in the Ted Stevens Act could be undermined.

Fourth, a finding of federal jurisdiction here would not disturb the federal/state balance. To be clear, Defendants do not argue that *every* LAD claim brought against an NGB belongs in federal court. Rather, Defendants' argument is limited to disputes where the requested relief would require a court to adjudicate athlete eligibility delegated by the Ted Steven Act. Federal jurisdiction exists here because Plaintiff's claim turns on the validity and enforcement of athlete eligibility rules promulgated pursuant to a comprehensive federal statutory framework.

Courts have found federal jurisdiction – more specifically "arising under jurisdiction" in cases alleging state law claims relating to questions of eligibility and other grievances that are governed by the Ted Stevens Act. *See, e.g.*, *Micheletti v. McGregor*, No. 25-245, 2025 U.S. Dist. LEXIS 133890, *12, *13, *14 (W.D. Tex. June 26, 2025) (recommending state claim brought by plaintiff (tortious interference with prospective business relationships), an allegedly aggrieved official disputing his right to participate/officiate rugby matches sanctioned by the relevant NGB, be found to be preempted by the Ted Stevens Act); *adopted by*, 2025 U.S. Dist. LEXIS 150014 (adopting the Magistrate Judge's determination that the aforementioned claim is preempted by the

Ted Stevens Act and dismissing it);[2] *Hale v. McGregor*, No. 24-1076, 2025 U.S. Dist. LEXIS 151470 (W.D. Tex. June 26, 2025) (recommending state law claims brought by plaintiff (tortious interference, breach of contract, defamation, and intentional infliction of emotional distress), an allegedly aggrieved official disputing the relevant NGB excluding him from officiating opportunities, be found to be preempted by the Ted Stevens Act), *adopted by*, 2025 U.S. Dist. LEXIS 150018 (W.D. Tex. Aug. 4, 2025) (adopting the Magistrate Judge's determination that the aforementioned claims are preempted by the Ted Stevens Act and dismissing them).[3]

Plaintiff argues that Defendants' invocation of the Ted Stevens Act is merely a defense and therefore cannot create federal question jurisdiction. Plaintiff is mistaken. Plaintiff attempts to characterize this case as a straightforward public accommodation dispute arising under the LAD. In reality, however, Plaintiff challenges USAF's determination concerning Plaintiff's eligibility to compete against women in a gender-designated competitive division. Congress vested NGBs such as USAF with authority to establish and administer athlete eligibility standards and created a comprehensive framework for resolving athlete eligibility disputes. 36 U.S.C. §§ 220509, 220523-220524, 220529. The Court cannot determine whether Plaintiff was unlawfully excluded from competition without interpreting the scope of USAF's federally-delegated authority and the eligibility requirements promulgated pursuant to that authority. The federal issue is therefore necessarily raised, actually disputed, substantial to the national system of amateur sports governance established by Congress, and capable of resolution in federal court without disrupting the federal/state balance. This action does indeed fall within the narrow category of state law claims that arise under federal law under *Grable*.

[2] A copy of these unreported decisions are attached to the Costa Cert. as Exhibit C.

[3] A copy of these unreported decisions are attached to the Costa Cert. as Exhibit D.

**C. Plaintiff's Claims are Completely Preempted by Federal Law; Therefore There is a Federal Question at Issue Here.**

1. Congress Established a Comprehensive, Uniform Federal Regime for Amateur Sport Eligibility and Dispute Resolution that Preempts Conflicting State Law Causes of Action.

Plaintiff's claims are preempted by the Ted Stevens Act. The Constitution's Supremacy Clause provides that "the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This language is the foundation for the doctrine of federal preemption, under which federal law supersedes conflicting state laws. *Murphy v. NCAA*, 584 U.S. 453, 477 (2018).

The Ted Stevens Act federally charters the United States Olympic and Paralympic Committee ("USOPC") and empowers it to certify NGBs (such as USAF) and assigns to the USOPC/NGBs the centralized authority to regulate athlete participation and eligibility in sanctioned amateur competitions. 36 U.S.C. §§ 220501-220505, 220521-220525. Among the express eligibility conditions for every NGB is an agreement to submit "any controversy involving … the opportunity of any amateur athlete, coach, trainer, manager, administrator or official to participate in amateur athletic competition" to binding arbitration administered under USOPC approved rules. 36 U.S.C. § 220522(4)(A), (B) (requiring arbitration "upon demand" of the USOPC or the aggrieved participant). The statute's text – together with USOPC bylaws and movement arbitration rules – reflects Congress's purpose to ensure a uniform, national, and arbitral forum for participation disputes, not a patchwork of state law standards and remedies. Congress intended exclusive federal governance over eligibility disputes. *Slaney*, 244 F.3d at 596 (stating there is "exclusive jurisdiction … to determine all matters pertaining to eligibility of athletes").

Under black letter preemption principles, when Congress erects a pervasive federal scheme in a domain requiring national uniformity and channels disputes into a specific remedial process, state law causes of action that would adjudicate those controversies are preempted by field preemption. *Murphy*, 584 U.S. at 479. Where, as here, state law (the LAD and New Jersey common law) interferes with Congress' intent, that state law is preempted. A court's "inquiry into the scope of a federal statute's preemptive effect is guided by the rule that the purposes of Congress is the ultimate touchstone in every preemption case." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016) (citation, quotation marks and brackets omitted).

Here, Congress's uniform, arbitration-centric framework created by the Ted Stevens Act leaves no room for state law claims that would supplant or second guess arbitration of decisions relating to an athlete's ability to compete. Defendants Legacy and Chamley-Watson, as alleged hosts of a USAF-sanctioned event (defendant USAF is an NGB), and USAF having to follow the USOPC's Athlete Safety Policy, required Legacy to follow USOPC's Athlete Safety Policy as well. *See* Costa Cert. at Exhibit A at ¶¶ 29, 32, 53, 62. Thus, USAF and Plaintiff were compelled to follow the procedure created by the Ted Stevens Act. This means that Plaintiff is required to bring her grievances pursuant to the procedure set forth in the Ted Stevens Act, *i.e.*, in arbitration.

2. Courts Applying the Act Repeatedly Hold that State Law Claims Attacking Eligibility/Participation Decisions are Preempted (or Must Be Resolved in the Ted Stevens Act's Arbitral Forum).

The Seventh Circuit's decision in *Slaney* is instructive. There, an athlete asserted state law claims (contract and tort) to challenge eligibility determinations arising from anti-doping rules. The Circuit Court affirmed dismissal, holding that the Ted Stevens Act's allocation of authority over eligibility disputes and its dispute resolution scheme foreclosed state law litigation of those issues. In short, the Ted Stevens Act grants "the [USOPC] exclusive jurisdiction under the [Ted

Stevens] Act, to determine all matters pertaining to eligibility of athletes," and state law claims "challeng[ing] … the method by which … eligibility of athletes" is determined cannot proceed outside the Ted Stevens Act's mechanisms. *Slaney*, 244 F.3d at 596. The *Slaney* holding maps directly onto Plaintiff's theory here, which seeks to use the LAD to re-characterize and litigate a participation/eligibility decision governed by the Ted Stevens Act.

More recently, federal courts addressing disputes within the USOPC/NGB framework continue to require parties to proceed through Ted Stevens Act arbitration and to reject efforts to recast participation controversies as free-standing state law claims.

For example, in *Dames v. United States Ctr. for SafeSport*, No. 25-3503, 2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026),[4] a U.S. Soccer Federation ("USSF" – an NGB) coach filed a complaint in state court to combat various complaints made against him by players. *Id.* at *6-8. The coach alleged claims of violation of his "fundamental rights," and two claims of tortious interference. The court found that Dames' complaint, like the Plaintiff's here, "does no more to plead around the preemption problem than his original complaint, and so the claims should be dismissed because they really are just challenges to the [United States Center for SafeSports'] ***eligibility determination***." *Id.* at *10 (emphasis added). Here, Plaintiff tries to plead around the Ted Stevens Act by couching her eligibility to compete as she wishes as a violation of the LAD. However, it is clear that Plaintiff tried to compete in a USAF-sanctioned fencing event which operates under the USOPC, and, as such, Plaintiff's claims are barred by the Ted Stevens Act.

[4] The unpublished decision is attached to the Costa Cert. as Exhibit E.

3. Allowing the LAD to Govern Athlete Categorization and Eligibility Would Pose a Direct Obstacle to the Ted Stevens Act's Purposes

Plaintiff's LAD theory seeks damages and injunctive relief predicated on how a USOPC-recognized NGB (and those organizing a sanctioned competition – like Legacy) categorized an athlete for entry into women's events. But athlete categorization for sanctioned events is a core eligibility/participation determination Congress placed inside the USOPC/NGB system, subject to uniform rules and arbitration – not 50 different state civil rights regimes with divergent standards, remedies, juries, and discovery. Imposing LAD liability on participation decisions would (1) conflict with 36 U.S.C. § 220522(4)(B)'s mandate that these controversies be resolved in binding arbitration; (2) undermine national uniformity by substituting state by state liability rules for the Ted Stevens Act's centralized process; and (3) deter NGBs and sanctioned organizers from enforcing nationally applicable eligibility policies for fear of inconsistent state law exposure. That is classic obstacle preemption. *See* Congressional Research Service, May 18, 2023, *Federal Preemption: A Legal Primer* (CRS Report No. R45825) https://www.congress.gov/crs-product/R45825 ("in its obstacle preemption cases, the Supreme Court has held that state law can interfere with federal goals by frustrating Congress' intent to adopt a uniform system of federal regulation;" in such a situation, state law is preempted.).

The USOPC's current governance materials reinforce the same point. They implement Congress' arbitration mandate and designate the arbitral body/rules that govern eligibility/participation disputes brought by amateur athletes within the Olympic & Paralympic Movement. Recognizing state law claims to re-adjudicate those same disputes would directly contravene the Ted Stevens Act's channeling of remedies. *Dames*, 2026 U.S. Dist. LEXIS 657 at *14-15 ("So the operative inquiry in determining whether this Court may hear [plaintiff's] claims [as opposed to referring them to arbitration] … is whether those claims are 'tort claims in name

only' that ***really seek to challenge an eligibility determination***, or whether [the claims] present only allegations that [defendant] breached its own rules for" not allowing Plaintiff to compete against women.) (emphasis added).

Ultimately, Plaintiff is challenging USAF's decision not to allow Plaintiff, a transgender woman, to compete against women. A challenge to an individual's eligibility to compete in an NGB-sanctioned tournament falls squarely within the scheme of the Ted Stevens Act, which requires arbitration. Plaintiff here attempts to characterize USAF's eligibility determination as a violation of the LAD, or intentional infliction of emotional distress, or civil conspiracy under the common law. This cannot be permitted. Plaintiff is challenging her ability to compete in the Tournament, which requires her to arbitrate her claims pursuant to the Ted Stevens Act.

If the Court were to grant Plaintiff's Motion to Remand, it would necessarily create a situation where the State court will be deciding the issue of federal preemption and the construing of a federal statute. Defendants respectfully submit that such a result does not make sense.

Despite Plaintiff's efforts to plead around the Ted Stevens Act, Plaintiff's claims simply relate to her competition eligibility, which falls squarely within the framework of the Ted Stevens Act, a federal statute. Therefore, there is federal jurisdiction here, and Plaintiff's Motion to Remand should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand should be denied.

Respectfully submitted,

*/s/ Claudia A. Costa*
Claudia A. Costa, Esq.

Dated: August 25, 2026