# EXHIBIT C

# *Micheletti v. McGregor*

United States District Court for the Western District of Texas, Austin Division

June 26, 2025, Decided; June 26, 2025, Filed

1-25-CV-245-RP

**Reporter**
2025 U.S. Dist. LEXIS 133890 *; 2025 LX 223642; 2025 WL 1914888

CHRISTOPHER CHOPRA MICHELETTI, Plaintiff, v. JAMIE MCGREGOR, AND USA RUGBY, Defendants.

**Subsequent History:** Adopted by, Dismissed by, Dismissed by, in part, Dismissed by, in part, Without prejudice, Judgment entered by *Micheletti v. McGregor, 2025 U.S. Dist. LEXIS 150014 (W.D. Tex., Aug. 4, 2025)*

Adopted by, Motion dismissed by, Dismissed by, Without prejudice, Objection overruled by *Micheletti v. McGregor USA Rugby, 2025 U.S. Dist. LEXIS 182167 (Sept. 11, 2025)*

**Counsel:** **[*1]** Christopher Chopra Micheletti, Plaintiff, Pro se.

For Jamie McGregor, Director of Training & Education USA Rugby |, USA Rugby, Defendants: Philip Robert Brinson, LEAD ATTORNEY, Gordon Rees Scully Mansukhani LLP, Austin, TX USA.

**Judges:** MARK LANE, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** MARK LANE

## Opinion

**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN

UNITED STATES DISTRICT JUDGE:

Before the court are Plaintiff's Motion to Consolidate (Dkt. 3), Jamie McGregor's Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* (Dkt. 9), USA Rugby's Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* (Dkt. 10), and all related briefing.[1] Having considered the pleadings and the relevant case law, the undersigned submits the following Report and Recommendation to the District Judge.

### I. BACKGROUND

Proceeding pro se, Plaintiff Christopher Chopra Micheletti brings this case against Defendants USA Rugby and Jamie McGregor, the Director of Training & Education at USA Rugby National Office. Dkt. 1 (Compl.) ¶ 11. Micheletti is a rugby referee who works as an independent contractor for various rugby organizations, including National Collegiate Rugby ("NCR"). *Id.* ¶ 28. Micheletti alleges that USA Rugby blocks Major League Rugby

[1] The motions were referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits or for disposition, as appropriate, pursuant to *28 U.S.C. § 636(b)*, *Rule 72 of the Federal Rules of Civil Procedure*, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders April 9, 2025.

("MLR") **[*2]** from using any referee who participates in NCR events. *Id.* ¶ 39. Micheletti alleges he was denied the opportunity to contract with the MLR to referee matches based on malicious and false statements McGregor made to MLR. *Id.* ¶ 40. Micheletti, who is Canadian, asserts that American referees who contract with the NCR are not prevented from working with the MLR. *Id.* ¶ 46.

Micheletti asserts a variety of claims, including tortious interference with business relationships, *id.*, ¶ 68-87; retaliation, *id.* ¶ 88-93; tortious interference with contracts, *id.* ¶ 95-102; violation of the *Ted Stevens Act, 36 U.S.C. § 220501, et seq.*, Compl. ¶ 104-14; discrimination, *id.* ¶ 115; intentional infliction of emotional distress, *id.* ¶ 117-129; denial of equal rights under the law, *id.* ¶ 130; and defamation, *id.* ¶ 131-37. Micheletti seeks compensatory damages of $250,000 for loss of income, emotional distress, and reputational harm. He seeks other compensatory damages as well.

Micheletti has moved to consolidate this case with *Hale v. McGregor*, 1:24-CV-1076-RP. Dkt. 3. *Hale* is also a rugby referee who similarly brings suit against McGregor and USA Rugby. 1:24-CV-1076-RP, Dkt. 1. McGregor and USA Rugby separately moved to dismiss Micheletti's claims, **[*3]** arguing that he failed to state a claim for which relief can be granted under *Rule 12(b)(6)*. Dkts. 9, 10, respectively. Micheletti responded to the motions, and Defendants separately replied.

However, before addressing those motions, the court must first satisfy itself that it has subject matter jurisdiction.

## II. Subject Matter Jurisdiction

### A. Applicable Law

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Gunn v. Minton, 568 U.S. 251, 256, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013)* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)*). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria, 739 F.3d 255, 258-59 (5th Cir. 2014)* (quoting *Kokkonen, 511 U.S. at 377*).

Generally, a federal court has jurisdiction over a case in two circumstances. The first, known as federal question jurisdiction, exists if a case "arises under the Constitution, treaties or laws of the United States." *28 U.S.C. § 1331*. The second circumstance in which a federal court has jurisdiction is frequently termed diversity jurisdiction. *See generally* *28 U.S.C. § 1332* (setting out the elements required for jurisdiction based on "diversity of citizenship"). "Diversity jurisdiction under *28 U.S.C. § 1332* only exists where the parties are citizens of different states and the amount in **[*4]** controversy exceeds $75,000." *White v. FCI USA, Inc., 319 F.3d 672, 674-675 (5th Cir. 2003)*. If the asserted basis of federal jurisdiction is the diversity of the parties, *28 U.S.C. § 1332*, the party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. *Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)*.

Although alienage jurisdiction and diversity jurisdiction are distinct concepts, they are both governed by *28 U.S.C. § 1332*, and they both require complete diversity between the parties. *Panalpina Welttransport GmBH v. Geosource, Inc., 764 F.2d 352, 354-55 (5th Cir. 1985)* (existence of aliens on both sides of a dispute destroys diversity jurisdiction); *Stiftung v. Plains Mktg., L.P., 603 F.3d 295, 297 (5th Cir. 2010)*; *Brown v. Soilmec S.p.A., No. 3:14-CV-1547-D, 2014 U.S. Dist. LEXIS 81860, 2014 WL 2750346, at *2 (N.D. Tex. June 17, 2014)* (citing 14A Charles A. Wright, et al., Federal Practice and Procedure § 3661, at 5 (4th ed. 2013); *Vantage Drilling Co. v. Hsin—Chi Su, 741 F.3d 535, 537 (5th Cir. 2014)* (per curiam) ("*[Section] 1332(a) (2)* requires complete diversity.")).

### B. Analysis

1. Alienage Jurisdiction

Micheletti asserts this court has diversity jurisdiction under *28 U.S.C. § 1332(a)*. Compl. ¶ 13. Micheletti is a citizen of Canada. *Id.* ¶ 14. McGregor "is a resident of the State of Colorado and believed to be a citizen of Australia." *Id.* ¶ 15; Dkt. 7 (McGregor's Answer) ¶ 15 ("Admit."). USA Rugby is incorporated under the laws of Delaware and maintains its principal place of business in Colorado. Compl. ¶ 16; Dkt. 8 (USA Rugby's Answer) ¶ 16 ("Admit."). Thus, Plaintiff Micheletti is **[*5]** an alien; Defendant McGregor is an alien; and Defendant USA Rugby is a citizen of Delaware and Colorado.

Micheletti's attempt to invoke the court's diversity or alienage jurisdiction fails. It is undisputed from the pleadings that Micheletti and McGregor are both aliens. Compl. ¶¶ 14, 15; McGregor's Answer ¶ 15 ("Admit."). Accordingly, the parties are not entirely diverse, and this court lacks authority to hear this case under *28 U.S.C. § 1332*.

However, Micheletti also attempts to assert claims that could arise under federal law. The court will next examine whether it has federal question jurisdiction.

2. Federal Question Jurisdiction

Title *28 U.S.C. § 1331* provides that district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Under this provision, federal courts have jurisdiction (even over suits with only a state-law cause of action) when the case presents a federal question that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the federal-state balance approved by Congress." *Ibarra Consulting Eng'rs Inc. v. Jacobs Eng'g Grp. Inc., 579 F. Supp. 3d 850, 854 (N.D. Tex. 2022)* (quoting *Gunn v. Minton, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013)*). This "captures the commonsense notion that a federal court ought to be **[*6]** able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues . . . ." *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005)*).

Here, Micheletti's claims center on whether Defendants have disparaged him by saying NCR's matches are "unsanctioned" under the Ted Stevens Act. Setting aside the dispute of whether Michelitti can assert claims under the Ted Stevens Act, his claims will turn on substantial questions of how the Act is interpreted and applied. Accordingly, it provides the court with federal question jurisdiction.

## III. *STANDARD OF REVIEW RULE 12(B)(6)*

When evaluating a motion to dismiss for failure to state a claim under *Rule 12(b)(6)* the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)*; *Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996)*. Although *Federal Rule of Civil Procedure 8* mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." **[*7]** *Bell Atl. v. Twombly, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id. at 570*. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. at 678*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. at 679*. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal

conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. **[*8]** If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id. at 679* (quoting *Fed. R. Civ. P. 8(a)(2)*).

### IV. MOTIONS TO DISMISS

Although McGregor and USA Rugby separately moved to dismiss, they raise many of the same arguments. Accordingly, the court will address the motions together and differentiate the motions if needed.

### A. Ted Stevens Act

The "*Ted Stevens Olympic and Amateur Sports Act*," (the "Act") *36 U.S.C. § 220501, et seq.*, creates a vertical structure for the management of certain amateur sports in the United States. *Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc., 213 F.3d 198, 203 (5th Cir. 2000)*. At the head of this vertical structure is the U.S. Olympic Committee, which Congress intended as a coordinating body for amateur sports that Americans compete in internationally. *Id.* At the next level are "national governing bodies" for each sport included in the Olympic Games or the Pan—American Games. *Id.* Once established, a national governing body has broad authority. *Abdallah v. U.S. Ass'n of Taekwondo, Inc., No. CIV.A. H-07-2880, 2007 U.S. Dist. LEXIS 68179, 2007 WL 2710489, at *1 (S.D. Tex. Sept. 14, 2007)*. In addition to other powers, it may establish national goals for the sport, act as the coordinating body for amateur athletic activity in the United States, conduct amateur athletic competition, and establish procedures for determining eligibility standards. *Id.*; *36 U.S.C. § 220523*.

One purpose of the Act is to provide swift resolution of conflicts involving national governing **[*9]** bodies and amateur sports organizations and, as relevant here, to protect the opportunity of any official to participate in amateur athletic competition. *36 U.S.C § 220503(8)*. Under the Act, all NGBs agree to submit to binding arbitration any controversy involving the opportunity of an official to participate in an amateur athletic competition. *36 U.S.C. § 220522(4)(B)*. Similarly, any party aggrieved by a U.S. Olympic Committee decision may obtain review by binding arbitration. *36 U.S.C. § 220529(a)*, *(d)*.

The parties agree that USA Rugby is a national governing body under the Act. The Act also recognizes "amateur sports organizations"—not-for-profit corporations, associations, or other groups organized in the United States that sponsor or arrange an amateur athletic competition. *36 U.S.C. § 220501(b)(3)*. "An amateur sports organization that conducts amateur athletic competition shall have exclusive jurisdiction over that competition if participation is restricted to a specific class of amateur athletes, such as high school students, *college students*, members of the Armed Forces, or similar groups or categories." *36 U.S.C. § 220526(a)* (emphasis added). An amateur sports organization must obtain a sanction, or permission, from the appropriate national governing body if the organization wishes to **[*10]** conduct international amateur athletic competition in the United States or sponsor international amateur athletic competition outside the United States. *36 U.S.C § 220526(b)*. Micheletti asserts National Collegiate Rugby is an "amateur sports organization."

Defendants move to dismiss any claims Micheletti brings under the Act. Defendants argue there is no private right of action under the Act and, even if Micheletti could assert a claim under the Act, he failed to exhaust the Act's administrative remedies. Micheletti argues the Act's no-private-right-of-action provision only applies to eligibility issues for the Olympics and other similar international amateur athletic competitions. Micheletti also argues the Act's administrative remedies do not apply to his claims.

The Act states, "neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter." *36 U.S.C. § 220505(b)(9)*. Courts have consistently held that the Act does not create a federal cause of action. *See Gonzalez v. United States Ctr. for SafeSport, 374 F. Supp. 3d 1284, 1290 (S.D. Fla. 2019)* ("*section 220505(b)(9)* is not a source of federal subject matter jurisdiction in this case"); *Navarro v. United States Ctr. for SafeSport, No. 3:24-CV-00030, 2025 U.S. Dist. LEXIS 7929, 2025 WL 209166, at *9 (W.D. Va. Jan. 15,*

*2025)* ("The 2020 Amendment did add two provisions to *§ 220541* clarifying that the Amateur Sports Act does not create a private right of action."); *U.S. Olympic Comm. v. Ruckman, No. CIV.A.09-4618FLW, 2010 U.S. Dist. LEXIS 52840, 2010 WL 2179527, at *6 (D.N.J. May 28, 2010)* ("By **[*11]** stating that 'neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter . . . .,' Congress apparently intended to limit the private right of action bar to actions purporting to be rooted in the Sports Act."); *Pliuskaitis v. USA Swimming, Inc., 243 F. Supp. 3d 1217, 1224 (D. Utah 2017)*, aff'd sub nom. *Pliuskaitis v. USA Swimming, 720 F. App'x 481 (10th Cir. 2018)*, ("While the Sports Act specifically provides that the USOC (and thus its NGBs like USA Swimming) may sue and be sued in federal court, it also expressly negates the establishment of a private right of action.").

Micheletti argues that this language only applies to Olympic or other international competition participation. While the beginning of the section at issue is limited to the U.S. Olympic Committee, the clause "neither this paragraph *nor any other provision of this chapter* shall create a private right of action under this chapter" is not so limited. *36 U.S. Code § 220505(b)(9)* (emphasis added). The Act does not provide a private cause of action. Micheletti points to no case allowing a private right of action under the Act to go forward.

Courts have found the Act not only preempts eligibility challenges brought directly under the Act, but other state law causes of action that essentially sought relief for issues governed **[*12]** by the Act. *Lee v. U.S. Taekwondo Union, 331 F. Supp. 2d 1252, 1257 (D. Haw. 2004)* (citing *Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 596 (7th Cir. 2001)*). Micheletti points out the Act also states that "[n]othing in this subsection shall be construed to preempt or otherwise abrogate the duty of care of the corporation under State law or the common law." *36 U.S. Code § 220505(d)(3)*. Micheletti argues that his state law claims do not arise under the Act and so should not be preempted. The court disagrees. The gravamen of Micheletti's claims is that McGregor and USA Rugby have described NCR's rugby matches as "unsanctioned," thereby impugning any rugby referee that has officiated an NCR match. Moreover, Micheletti contends Defendants prevented MLR from contracting with referees who have officiated NCR matches. Accordingly, the Act preempts Micheletti's state-law claims.

Micheletti argues preemption should not apply because USA Rugby does not have arbitration procedures for non-members. This argument also fails. The Act requires that any national governing body agree to submit to arbitration a dispute with *any* aggrieved official who disputes their right to participate in an amateur athletic competition. *36 U.S.C. § 220522(4)(B)*,*(8)*.

However, the Act does not expressly supersede other federal statutes. *Lee, 331 F. Supp. 2d at 1259*. A number of courts recognize carve-outs to the Act's exclusive jurisdiction. **[*13]** *Abdallah v. U.S. Ass'n of Taekwondo, Inc., No. CIV.A. H-07-2880, 2007 U.S. Dist. LEXIS 68179, 2007 WL 2710489, at *1 (S.D. Tex. Sept. 14, 2007)*; *see, e.g.*, *Slaney, 244 F.3d 580* (finding RICO and conspiracy allegations not preempted); *Akiyama v. U.S. Judo Inc., 181 F. Supp. 2d 1179* (holding *Title II of Civil Rights Act of 1964* applied to prevent discrimination on basis of religion at judo competition); *Sternberg v. USA Nat'l Karate-Do Fed'n, Inc., 123 F. Supp. 2d 659 (E.D.N.Y. 2000)* (proceeding on a *Title IX* claim against karate national governing body based on organization's decision to withdraw women's karate team from international competition); *Lee, 331 F. Supp. 2d at 1252* (rejecting the Act's preemption of federal civil rights laws, specifically race discrimination in violation of *§ 1981*). Thus, the Act does not preempt any federal claims Micheletti might bring.

Accordingly, the court will next determine whether each of Micheletti's claims is preempted. Additionally, in the event the District Judge does not adopt the preemption recommendation, the court will also examine whether each claim is adequately pleaded.

### B. Tortious Interference with Prospective Business Relationships

This is a state law claim, *see* *Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013)*. Micheletti alleges Defendants interfered with his prospective business relationships when they told others he officiated unsanctioned matches. It is therefore preempted under the Act.

Texas law protects prospective contracts and business relations from tortious interference. *Coinmach Corp, 417 S.W.3d at 923*. To prevail on a claim **[*14]** for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Id.*

Defendants argue Micheletti failed to adequately plead a reasonable probability that he would enter into a future business contract but for McGregor's interference. The court disagrees. Micheletti describes that he was working to secure referee positions at various matches with Major League Rugby's head referee, but that came to an end because USA Rugby blocked any use of referee who participated in NCR events. *See* Compl. ¶¶ 32-39.

Defendants also argue that Micheletti failed to identify any actual tortious or unlawful conduct by Defendants. Defendants argue that Micheletti's **[*15]** allegation that they told others not to work with Micheletti is not actionable. Again, the court disagrees. Micheletti pleaded that Defendants made false statements about the unsanctioned nature of Micheletti's work for the NCR. *See* Compl. ¶¶ 60, 76, 122.

Micheletti has adequately pleaded this claim, if the District Court does not find it preempted.

### C. Tortious Interference with Contract

This is a state law claim, *see* *Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 402 (5th Cir. 2013)*. Micheletti alleges Defendants interfered with his contracts when they told others he officiated unsanctioned matches. It is therefore preempted under the Act.

Under Texas law, the elements of tortious interference with contract are: (1) the existence of a contract, (2) willful and intentional interference, (3) interference that proximately caused damage, and (4) actual damage or loss. *Mumfrey, 719 F.3d at 402*. Defendants argue Micheletti fails to identify the existence of any specific contract under which he brings this claim. In response to this and McGregor's other arguments, Micheletti directs the court to Exhibits H-P attached to his Complaint. Generally, these exhibits show that Micheletti was part of the pool of Major League Rugby referees for the 2024 season and that McGregor prevented **[*16]** Major League Rugby from using any referee who had officiated NCR rugby matches. Compl. Exhs. H-P. However, in Exhibit I, the Major League Rugby Referee Manager sent an email to the pool of referees, stating that "[i]t is possible that not all of you will be used this year." Compl. Exh. I. Additionally, it is clear from a WhatsApp conversation between Micheletti and the Referee Manager that Micheletti was never asked to referee any specific rugby matches. Compl. Exh. J ("Haven't really had any comms since the initial AR meeting.") ("I'm guessing I'm being put in the same situation based on the lack of any communication from MLR over the past month."). Based on these exhibits, the court agrees that there was no existing contract with which Defendants are accused of interfering. Accordingly, the undersigned will recommend this claim be dismissed.

### D. Intentional Infliction of Emotional Distress

This is a state law claim, *see* *Wal—Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740-41 (Tex. 2003)*. Micheletti alleges Defendants caused him emotional distress when they told others he officiated unsanctioned matches and interfered with his business relationships. It is therefore preempted under the Act.

To recover damages for intentional infliction of emotional distress, **[*17]** a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Canchola, 121 S.W.3d at 740-41*. To be extreme and outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Id. 740-41*. Conduct that is merely insensitive or rude is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id. at 741*. A claim for intentional infliction of emotional distress does not lie for "'ordinary employment disputes.'" *Id.* Only "in the most unusual of circumstances" is conduct so extreme and outrageous that it is removed from the realm of ordinary employment disputes. *Id.*

Additionally, intentional infliction of emotional distress is a "gap-filler" tort, created to permit recovery in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that **[*18]** the victim has no other recognized theory of redress." *Hoffmann-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 447 (Tex. 2004)*. Thus, if the gravamen of a plaintiff's complaint is another tort, a claim for intentional infliction of emotional distress claim will not lie regardless of whether the plaintiff succeeds on or asserts the alternate claim. *Id.*

Defendants argue Texas law does not allow this claim when it is essentially another claim. Despite Micheletti's arguments to the contrary, Defendants are correct. Micheletti has asserted other claims that cover Defendants' conduct at issue. Micheletti's pleadings that Defendants' conduct was extreme and outrageous are legal conclusions that do not carry any weight. The undersigned will recommend that this claim be dismissed.

### E. Defamation

This is a state law claim, *see Parker v. Spotify USA, Inc., 569 F. Supp. 3d 519, 528 (W.D. Tex. 2021)*. Micheletti alleges Defendants defamed him when they told others he officiated unsanctioned matches. It is therefore preempted under the Act.

To maintain a defamation claim, the plaintiff must plead facts that show the defendant: (1) published "a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Parker, 569 F. Supp. 3d at 528* (citing *In re Lipsky, 460 S.W.3d 579, 593 (Tex. 2015)*).

Defendants argue Micheletti **[*19]** has not sufficiently pleaded this claim. Although Defendants concede *Rule 9(b)* does not apply to the claim, they also argue the claim must fail because Micheletti did not plead when, where, or to whom the defamatory statements were made.

Micheletti pleaded that Defendants told others he had officiated unsanctioned matches, this impugned his character to them, and he lost business opportunities because of it. Micheletti has adequately pleaded this claim, if the District Court does not find it preempted.

### F. Retaliation and Discrimination

Defendants move to dismiss Micheletti's retaliation and discrimination claims and point out that Micheletti did not plead under what law he intends to bring these claims. Nonetheless, Defendants argue Micheletti failed to adequately plead his claims under *§ 1981*, Title VII, or Texas state law. In response, Micheletti argues he brings his retaliation claim under *§ 1981*, Title VII, Colorado law, the Canadian Human Rights Act and Quebec's Charter of Human Rights and Freedoms, and he brings his discrimination claim under Canadian law, Quebec's Charter of Human Rights and Freedoms, and Title VII. In reply, Defendants argue there is no reason Colorado, much less Canadian, law applies **[*20]** in this case.

Micheletti did not plead the legal basis for his retaliation or discrimination claim, and the court will not engage in hypothetical analysis of statutes under which he might assert his claims. Accordingly, Micheletti is ordered to replead these claims if he wishes to pursue them.

### G. Denial of Equal Rights

Micheletti also asserts that Defendants "have denied him equal rights under the law in that he has been denied the right to make and enforce contracts as has been enjoyed by similarly situated American individuals." Compl. ¶ 130. Defendants do not moved to dismiss this claim. But like Micheletti's retaliation and discrimination claim, Micheletti does not plead the statutory framework under which he brings this claim. Accordingly, Micheletti is ordered to replead this claim if he wishes to pursue it.

## V. Motion to Consolidate

The court has three suits brought against Jamie McGregor and USA Rugby: *Justin X. Hale v. Jamie McGregor & USA Rugby*, 1:24-CV-1076-RP; *Christopher Chopra Micheletti v. Jamie McGregor & USA Rugby*, 1:25-CV-245-RP; and *National Collegiate Rugby Inc. v. Janie McGregor & USA Rugby*, 1:25-CV-269-RP. Micheletti and National Collegiate Rugby have both moved to **[*21]** consolidate their cases into Hale's. McGregor and USA Rugby oppose consolidation. All three cases are still in their early stages.

Under *Fed. R. Civ. P. 42(a)(2)*, "[i]f actions before the court involve a common question of law or fact, the court may [...] consolidate the actions." (emphasis added). When deciding whether consolidation is appropriate under *Rule 42(a)(2)*, courts are to consider whether "(1) the actions are pending before the same court; (2) there are common parties; (3) there are common questions of law or fact; (4) there is risk of prejudice or confusion if the cases are consolidated, and, if so, whether the risk of inconsistent adjudication of factual and legal issues, if the cases are handled separately, outweighs the risk of prejudice or confusion; (5) consolidation will conserve judicial resources and reduce the time and cost of handling the cases separately; and (6) the cases are at different stages or preparation." *Lee v. Samsung Elecs. Am., Inc., 2023 U.S. Dist. LEXIS 37025, 2023 WL 2328442, at *3 (S.D. Tex. Feb. 3, 2023)*.

Hale and Micheletti are both rugby referees who claim McGregor and USA Rugby have discriminated and retaliated against them because they have officiated rugby matches organized by National Collegiate Rugby. Hale and Micheletti allege McGregor and USA Rugby have interfered with their ability **[*22]** to referee matches organized by USA Rugby. National Collegiate Rugby claims are based on the allegation that McGregor and USA Rugby overstepped their authority under the *Ted Stevens Olympic and Amateur Sports Act (the "Act"), 36 U.S.C. § 220501, et seq.*, to assert that National Collegiate Rugby's matches are "unsanctioned" under the Act.

NCR purports to assert a claim against Defendants for violations of the Ted Stevens Act. Meanwhile, to avoid Defendants' preemption arguments, Hale and Micheletti both disclaim that their claims are brought under the Act. Defendants argue the cases do not share enough in common to warrant consolidation. Defendants also contend consolidation would prejudice them.

Although all three cases are in their early stages, NCR's case is rapidly diverging from *Hale* and *Micheletti*. NCR has moved for a partial summary judgment on a legal issue and Defendants have moved to compel arbitration under the Act.

The court has denied NCR's motion but will allow it to be reraised after resolution of the motion for summary judgment and motion to compel arbitration. Thus, the issue becomes whether Micheletti's case should be consolidated into Hale's. Micheletti, a Canadian, alleges Defendants have treated him differently than American referees who have officiated **[*23]** matches for NCR. Hale, a Black American, alleges Defendants have treated him differently than white American referees who have officiated matches for NCR. The undersigned is ordering both Hale and Micheletti to replead their federal claims. The court anticipates that once those amended complaints are filed, Defendants will again move to dismiss them.

Accordingly, the court denies without prejudice the motion to consolidate. Micheletti may re-urge the motion after the anticipated motions to dismiss are decided and the pleadings are finalized in this case and in *Hale*.

## VI. Recommendations

The undersigned further **RECOMMENDS** that the District Judge **GRANTS** Jamie McGregor's Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* (Dkt. 9) and USA Rugby's Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* (Dkt. 10) **WITH PREJUDICE** as to Hale's state-law claims and **WITHOUT PREJUDICE** as to his federal claims.

Michelleti is **ORDERED** to file an Amended Complaint in the **next 14 days**, asserting his federal claims as described in this Report and Recommendation.

The court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Consolidate (Dkt. 3).

### VII. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must **[*24]** specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987)*.

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* *28 U.S.C. § 636(b)(1)(C)*; *Thomas v. Arn, 474 U.S. 140, 150-53, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*; *Douglass v. United Services Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996)*(en banc).

SIGNED June 26, 2025.

/s/ Mark Lane

MARK LANE

UNITED STATES MAGISTRATE JUDGE

---

End of Document

# Micheletti v. McGregor

United States District Court for the Western District of Texas, Austin Division

August 4, 2025, Decided; August 4, 2025, Filed

1:25-CV-245-RP

**Reporter**
2025 U.S. Dist. LEXIS 150014 *; 2025 LX 358138; 2025 WL 2218883

CHRISTOPHER CHOPRA MICHELETTI, Plaintiff, v. JAMIE MCGREGOR and USA RUGBY, Defendants.

**Prior History:** *Micheletti v. McGregor, 2025 U.S. Dist. LEXIS 133890 (W.D. Tex., June 26, 2025)*

**Counsel:** **[*1]** Christopher Chopra Micheletti, Plaintiff, Pro se.

For Jamie McGregor, Director of Training & Education USA Rugby, USA Rugby, Defendants: Philip Robert Brinson, LEAD ATTORNEY, Gordon Rees Scully Mansukhani LLP, Austin, TX.

**Judges:** ROBERT PITMAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT PITMAN

## Opinion

**ORDER**

Before the Court is the report and recommendation of United States Magistrate Judge Mark Lane concerning Defendants' motions to dismiss, (Dkts. 9, 10). (R. & R., Dkt. 18). Plaintiff timely filed objections, (Objs., Dkt. 19), and Defendants filed a response, (Dkt. 20). Having reviewed the report and recommendation, the parties' briefs, the record, and the relevant law, the Court issues the following order.

Plaintiff Christopher Chopra Micheletti ("Plaintiff"), proceeding *pro se*, brings this case against Defendants USA Rugby ("USA Rugby") and Jamie McGregor ("McGregor"), the Director of Training and Education at USA Rugby (collectively, "Defendants"). (R. & R., Dkt. 18, at 1). Plaintiff is a rugby referee who works as an independent contractor for various rugby organizations, including National Collegiate Rugby ("NCR"). He alleges that USA Rugby blocks Major League Rugby ("MLR") from using any referee who participates **[*2]** in NCR events. Micheletti alleges he was denied the opportunity to contract with MLR to referee matches based on allegedly malicious and false statements McGregor made to MLR. Micheletti, who is Canadian, also asserts that American referees who contract with NCR are not prevented from working with MLR. (*Id.* at 1-2). In his Complaint, Plaintiff asserts a variety of claims including tortious interference with business relationships, retaliation, tortious interference with contracts, defamation, discrimination, denial of equal rights under the law, intentional infliction of emotional distress, and violation of the *Ted Stevens Act, 36 U.S.C. § 220501, et seq.* (*Id.* at 2).

McGregor and USA Rugby separately moved to dismiss Plaintiff's claims under *Federal Rule of Civil Procedure 12(b)(6)*. (Dkts. 9, 10). Plaintiff responded to the motions, (Dkts. 12, 13), and Defendants separately replied, (Dkts. 16, 17). By text order, the Court referred the motions to dismiss to United States Magistrate Judge Mark Lane.

In his report and recommendation, the magistrate judge recommends that this Court grant Defendants' motions. (R. & R., Dkt. 18, at 17). The magistrate judge found that Plaintiff's Ted Stevens Act claims should be dismissed because there is no private right of action under **[*3]** the Act. (*Id.* at 8-9). In addition, the magistrate judge found that the Ted Stevens Act "not only preempts eligibility challenges brought directly under the Act, but other state law

causes of action that essentially sought relief for issues governed by the Act." (*Id.* at 9). As such, the magistrate judge found that the Act preempts Plaintiff's state-law claims for tortious interference with prospective business relationships, tortious interference with contract, intentional infliction of emotional distress, and defamation. (*Id.* at 9-13). In the alternative, the magistrate judge recommends that the Court dismiss Plaintiff's tortious interference with contract and intentional infliction of emotional distress claims as inadequately pleaded, if the Court does not find these claims preempted. (*Id.* at 11-13). Last, the magistrate judge found that although the Ted Stevens Act preempts Plaintiff's statelaw claims, it does not preempt federal claims. (*Id.* at 9-10). Nonetheless, the magistrate judge found that Plaintiff's retaliation, discrimination, and denial of equal rights claims should be dismissed as inadequately pleaded because Plaintiff did not specify the legal basis for these claims **[*4]** in his complaint. The magistrate judge ordered Plaintiff's to replead these claims if he wished to pursue them. (*Id.* at 14-15). In conclusion, the magistrate judge recommends that the Court dismiss Plaintiff's state-law claims with prejudice and his federal claims without prejudice. (*Id.* at 17).

A party may serve and file specific, written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). Because Plaintiff timely objected to the report and recommendation, the Court reviews the report and recommendation *de novo*.

The Court agrees with the magistrate judge that the Ted Stevens Act claim should be dismissed because there is no private right of action under the Act. The Court also agrees that the Act preempts Plaintiff's state-law claims and that those claims should be dismissed.[1] Last, the Court agrees that Plaintiff's retaliation, discrimination, and denial of equal rights claims should be dismissed as inadequately pleaded. Accordingly, for the reasons given in the report and recommendation, the Court overrules Plaintiff's objections **[*5]** and grants Defendants' motions to dismiss Plaintiff's complaint.

At the conclusion of the report and recommendation, the magistrate judge ordered Plaintiff to file an amended complaint within 14 days so that he could reassert any federal claims he wished to pursue, i.e., his retaliation, discrimination, and denial of equal rights claims. (R. & R., Dkt. 18, at 17). Because the report and recommendation was filed on June 26, 2025, Plaintiff's deadline for filing an amended complaint was July 10, 2025. However, Plaintiff did not comply with the magistrate judge's order. Accordingly, the Court finds it appropriate to enter final judgment.

For these reasons, the Court **ORDERS** that the report and recommendation of United States Magistrate Judge Mark Lane, (Dkt. 18), is **ADOPTED** in accordance with this order.

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss, (Dkts. 9, 10), are **GRANTED**. Plaintiff's state-law claims are **DISMISSED WITH PREJUDICE**, and Plaintiff's federal claims are **DISMISSED WITHOUT PREJUDICE**.

The Court will enter final judgment by separate order.

**SIGNED** on August 4, 2025.

/s/ Robert Pitman

ROBERT PITMAN

UNITED STATES DISTRICT JUDGE

**FINAL JUDGMENT**

---

[1] Because the Court agrees with the magistrate judge's preemption recommendation, the Court does not reach the issue of whether any state-law claims should be dismissed as inadequately pleaded.

On this date, the Court issued **[*6]** an order adopting United States Magistrate Judge Mark Lane's report and recommendation concerning Defendants Jamie McGregor and USA Rugby's (collectively, "Defendants") motions to dismiss, (Dkts. 9, 10). (R. & R., Dkt. 18). The Court granted Defendants' motions, dismissing Plaintiffs' state-law claims with prejudice and his federal claims without prejudice.

As nothing remains to resolve, the Court renders final judgment pursuant to *Federal Rule of Civil Procedure 58*.

**IT IS ORDERED** that the case is **CLOSED**.

**SIGNED** on August 4, 2025.

/s/ Robert Pitman

ROBERT PITMAN

UNITED STATES DISTRICT JUDGE

---

End of Document